2019 IL App (3d) 170185

Opinion filed July 11, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0185 Circuit No. 16-CF-264 |
| | ) | |
| WILLIAM GRANT, | ) ) | The Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice Schmidt and Justice Lytton concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    After a jury trial, defendant, William Grant, was convicted of home invasion (720 ILCS 5/19-6(a)(1) (West 2016)) and was sentenced to 24 years in prison. Defendant appeals his conviction and sentence, arguing that the trial court erred in (1) granting the State's midtrial request to remove the lone African American juror from the jury for cause and (2) considering a fact inherent in the crime of which defendant was convicted as a factor in aggravation in defendant's sentencing. We affirm the trial court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3       In April 2016, defendant, who is African American, was charged with home invasion (two counts), attempted aggravated criminal sexual assault, and certain other related offenses for allegedly breaking into a home in Peoria, Illinois, and attempting to sexually assault a person who was staying at the residence. Four months later, in August 2016, defendant's case proceeded to a jury trial. The jury was selected with one African American juror, Juror B., on the jury.

¶ 4       Following opening statements, outside the presence of the jury, the trial court noted that two of the jurors were starting to fall asleep. The trial court stated:

          "Okay. I'm gonna make a record of this then too. It's 10:00 in the morning. At 9:40, less than one half an hour of—of time being on the—being in the jury box I noticed a juror starting to nod off, starting to fall asleep, and I told the lawyers about it, indicated which juror it is, and it is Juror [B.].

          And I see his eyelids going more and more towards closing, and as—as that's happening, his head starts lowering. That whole thing is only maybe five seconds, and I cannot say that he ever fell asleep.

          And, in fact, I don't think he did ever fall asleep, but I'm thinking at 9:30 in the morning he's like that, it worries me then about his ability to stay awake the entire morning.

          And by the way, the juror sitting right in front [Juror C.] was doing the same thing, but nowhere near as much as [Juror B.] so I'm gonna be keeping my eye on—on both of them."

¶ 5       After the testimony of the State's first witness, the alleged victim of the attempted sexual assault, the trial court took a recess. Outside the presence of the jury, the prosecutor informed the trial court that he had asked a victim witness advocate who was employed by the Peoria County

State's Attorney's Office to watch Juror B. during the victim's testimony. According to the prosecutor, the advocate indicated that Juror B. was sleeping for a large and significant portion of the victim's testimony. The trial court stated that it had been "keeping an eye" on Juror B. during the testimony but it had not noticed him sleeping. The advocate told the trial court that Juror B. was nodding off and that he had lowered his head down and jolted awake during the testimony. The advocate stated further that Juror B.'s tablet had slid off his lap onto the floor two or three times and had attracted the attention of other jurors. Defendant's attorney indicated that he did not see Juror B.'s conduct because he was paying attention to the witness and commented that, before the trial court considered removing Juror B., it was important for the court to actually establish that Juror B. was sleeping. The trial court stated repeatedly that it had complete faith in the advocate's credibility and noted that there easily could have been times where Juror B. had done what the advocate claimed but the trial court had not seen it because the trial court was watching the witness testify a lot of the time and was also watching the lawyers and all of the jurors. The trial court checked to see if the courtroom security cameras had recorded the complained-of conduct but was told that the security cameras did not record the jurors. After some further discussion, the trial court found that Juror B. had been sleeping.

¶ 6        On the State's motion and over defendant's objection, the trial court dismissed Juror B. from the jury for cause. Defendant moved for a mistrial, and the trial court denied that request. In denying defendant's request for a mistrial, the trial court stated that, based upon its own observations coupled with the observations of the advocate, it had concluded that Juror B. was sleeping and that it had removed Juror B. from the jury for that reason.

¶ 7        Defendant reminded the trial court that Juror C. had been falling asleep as well. The trial court commented that Juror C. "was only doing the eyelids getting heavy thing, nowhere near the

extent that [Juror B.] was doing" but stated that it was worried about Juror C. and that it was going to instruct the jurors that they should all stay awake. When the jury was brought back into the courtroom, the trial court instructed the jurors that it expected the jurors to stay away during the trial. The trial then proceeded, and defendant was eventually found guilty of home invasion.[1]

¶ 8        A presentence investigation report (PSI) was ordered, and the case was scheduled for a sentencing hearing. Prior to the sentencing hearing, defendant filed two posttrial motions. One motion was filed by defense counsel; the other was filed by defendant *pro se*. In the motions, defendant (defendant and defense counsel) argued, among other things, that defendant was denied a fair trial when the trial court granted the State's motion to remove the lone African American juror from the jury and that the trial court applied a double standard in doing so. After a hearing, the trial court denied defendant's posttrial motions. In doing so, the trial court commented on Juror B. falling asleep during the trial and stated that there was a big difference in what the court had observed between Juror B. and any other juror.

¶ 9        Defendant's PSI showed that defendant was 48 years old and had a lengthy criminal history that spanned over 30 years. Defendant had seven prior felony convictions—four for the Class 4 felony offense of failing to register or to report address change as a sex offender (1998, 2000, 2000, 2002), one for the Class 3 felony offense of failing to report address change as a sex offender (2009), one for the Class 2 felony offense of aggravated domestic battery (2006), and one for the Class X felony offense of aggravated criminal sexual assault (1987). Defendant also had approximately 18 prior misdemeanor convictions (not including traffic offenses), many of which were for resisting a police officer or correctional employee.

_____

[1]Defendant was actually found guilty of two counts of home invasion. A mistrial was declared on a remaining charge because the jury was unable to reach a verdict on that charge.

¶ 10    A sentencing hearing was held in December 2016. During the sentencing hearing, the State recommended to the trial court that defendant be sentenced to the maximum sentence of 30 years in prison because of defendant's criminal record; the circumstances of the offense (breaking into a person's home, holding a knife to a woman's throat in her own bedroom, and demanding that the woman take her clothes off); the need to deter others from committing the same offense; and the need to protect the community from defendant. In addition, the State suggested to the trial court that defendant's conduct had threatened serious harm in that the victim awoke to find defendant on top of her and that defendant had held a knife to the victim's throat in her own bedroom. Defense counsel argued that, while defendant had a number of previous convictions, his record did not warrant the harsh sentence advocated by the State and asked the court to consider a sentence in the lower portion of the sentencing range. Defense counsel pointed out to the court that five of defendant's seven prior felony convictions were for registration offenses, that defendant's prior Class X felony conviction was for an offense that took place a long time ago, and that defendant had already been punished for his prior offenses. Defense counsel also noted that defendant had obtained his General Education Development certificate, had a significant work history, and had struggled through some difficulties in his life.

¶ 11    After listening to the arguments of the attorneys, the trial court announced its sentencing decision. The trial court stated that it found three factors in aggravation: (1) that "defendant's conduct caused or threatened serious harm with the holding [of] the knife to the throat *** of the victim in this case," (2) that defendant had a history of prior criminal activity, and (3) that the sentence was necessary to deter others from committing the same crime. The trial court commented further about defendant's criminal history, stating:

"Seven prior felonies is a lot to overlook, to be asked to overlook even if only figuratively asked that. Seven prior felonies. One is a [*sic*] aggravated criminal sexual assault, a Class X. Another is aggravated domestic battery, Class 2. The others are failures to report. I count failures to report. The legislature counts them and insists that I count them. This [']only failures to report,['] what do you mean only I would say? Definitely do not rise to the level of an aggravated domestic battery or a [*sic*] aggravated criminal sexual assault."

The trial court ultimately sentenced defendant to 24 years in prison.[2]

¶ 12    Defendant filed a motion to reconsider sentence and argued that the sentence imposed upon him was excessive. A hearing was later held on the motion. When defense counsel finished his argument on the motion and before the State responded, the trial court commented:

"Sentencing range was six to 30 years. Day-for-day good time applies. I did not have the option of probation. Defendant had seven prior felony convictions, just for everybody's information."

After the State made its argument on the motion, the trial court announced its ruling—that it was denying defendant's motion to reconsider sentence. In doing so, the trial court stated:

"I said what I said between the two lawyers speaking for a reason, laying out a foundation for my ruling which is to deny the Motion to Reconsider the Sentence. Six-to-30-year range and you get 24 when you've got seven prior felonies. And the situation I've [*sic*] presented with on file 16 CF 264, the one that the sentencing was about, looking at my trial notes, and 24 is a fine sentence that I can easily defend. So Motion to Reconsider is denied."

---

[2]The trial court imposed sentence on defendant on only one of the two home invasion convictions (count I) and did not impose sentence upon defendant for the other home invasion conviction (count II).

¶ 13    Defendant appealed.

¶ 14                                    II. ANALYSIS

¶ 15                        A. Midtrial Removal of Juror for Cause

¶ 16    As his first point of contention on appeal, defendant argues that the trial court erred in granting the State's midtrial request to remove the lone African American juror from the jury for cause. Defendant asserts first that the disparate treatment of the lone African American juror amounted to unconstitutional discrimination that denied defendant equal protection of the law because the African American juror (Juror B.) was treated differently than the other similarly situated juror (Juror C.) who was not African American. Second, defendant asserts that he was denied due process of law when the trial court granted the State undue, outsized influence over the composition of the jury during defendant's trial by granting the State's request to remove Juror B. from the jury for cause without any factual support and without conducting an inquiry. According to defendant, there was no independent evidence to support a finding that Juror B. had fallen asleep or that he had missed any testimony. Defendant also claims that the trial court did not recognize that it had the discretion to reopen *voir dire* and conduct an independent investigation of the State's allegation of juror misconduct. Instead, defendant maintains, the trial court essentially delegated its authority to the State and merely adopted the State's victim witness advocate's representations that Juror B. had fallen asleep during the testimony, even though those representations were contrary to the trial court's own observations. For all of the reasons stated, defendant asks that we reverse his conviction and that we remand this case for further proceedings, presumably a new trial.

¶ 17    The State argues first that defendant has forfeited this claim of error on appeal by failing to specifically raise it in the trial court. In the alternative, the State argues that the trial court's

ruling was proper and should be upheld. As for defendant's equal protection claim, the State asserts that the trial court's ruling did not deprive defendant of equal protection of the law because Juror B. and Juror C. were not similarly situated, as the trial court noted that Juror B.'s conduct was far worse than Juror C.'s. Thus, the State contends that Juror B. was properly dismissed for race-neutral reasons—because he was falling asleep during the presentation of the evidence. As for defendant's due process claim, the State asserts that defendant's claim should be rejected because it is based upon unsubstantiated statements and selective quotes from the record. According to the State, a fair reading of the record shows that the trial court exercised its discretion and made a finding, which is entitled to deference on appeal, that Juror B. was sleeping during the trial. Thus, the State contends, defendant was not deprived of due process of the law. For all of the reasons set forth, the State asks that we affirm the trial court's judgment.

¶ 18    In reply, defendant asserts that he sufficiently raised this claim of error in the trial court to prevent the issue from being forfeited on appeal. Alternatively, defendant asserts that this court should reach the issue, nevertheless, as a matter of second-prong plain error.

¶ 19    We need not address plain error because we agree with defendant that he properly preserved this claim of error for appellate review. See *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009) (stating that the issue raised by a litigant on appeal does not have to be identical to the objection raised at trial and that a court will not find that a claim has been forfeited when it is clear that the trial court had the opportunity to review essentially that same claim). Even though defendant may not have specifically referred to equal protection or due process, he raised essentially the same claims in the trial court when he argued that the trial court erred in granting the State's request to remove Juror B. for cause, that the trial court applied an unfair double standard, and that he was deprived of a fair trial as a result of the trial court's ruling. We find,

therefore, that the forfeiture rule does not apply, and we will now address the merits of defendant's first claim of error.

¶ 20     The question of whether a defendant was denied equal protection or due process by the trial court is a question of law that is subject to *de novo* review on appeal. See *People v. Hollins*, 366 Ill. App. 3d 533, 538 (2006) (stating that because an equal protection claim is a constitutional question, the standard of review on appeal is *de novo*); *People v. Williams*, 2013 IL App (1st) 111116, ¶ 75 (stating that whether a defendant's due process rights have been denied is an issue of law that is subject to *de novo* review on appeal). The equal protection clause of the fourteenth amendment to the United States Constitution prohibits the exclusion of any individual juror from a jury on account of his or her race. See U.S. Const., amend. XIV; *Powers v. Ohio*, 499 U.S. 400, 404 (1991); *Hollins*, 366 Ill. App. at 538. Although a defendant has no right to a jury composed in whole or in part of persons of his own race, he does have the right to be tried by a jury whose members are selected using nondiscriminatory criteria. *Powers*, 499 U.S. at 404. Because the fourteenth amendment protects an accused throughout the proceedings used to bring him to justice, the State may not draw up its jury lists pursuant to neutral procedures but then resort to discrimination in other parts of the selection process. *Id.* at 409. An equal protection claim arises when a charge is made that similarly situated individuals were treated differently without a rational relationship to a legitimate State purpose. *Kaltsas v. City of North Chicago*, 160 Ill. App. 3d 302, 305-06 (1987). To establish a claim of racial discrimination in jury selection, a purpose to discriminate must be present, "which may be proven by systematic exclusion of eligible jury persons of the proscribed race or by unequal application of the law to such an extent as to show intentional discrimination." *Akins v. Texas*, 325 U.S. 398, 403-04 (1945). The burden is on the defendant to establish discrimination. *Id.* at 400.

¶ 21    The due process clauses of the United States and Illinois Constitutions protect individuals from the deprivation of life, liberty, or property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *People v. One 1998 GMC*, 2011 IL 110236, ¶ 21; *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 29. Under the case law, there are two distinct branches of due process analysis: substantive due process and procedural due process. *Pollard*, 2016 IL App (5th) 130514, ¶ 29. When a violation of substantive due process is alleged, such as in the present case, the appropriate inquiry is whether the individual has been subjected to the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. *Id.* Substantive due process requires, among other things, that there be an overall balance—a level playing field—between the prosecution and the defense in a criminal trial. See *United States v. Harbin*, 250 F.3d 532, 540 (7th Cir. 2001); *Tyson v. Trigg*, 50 F.3d 436, 441 (7th Cir. 1995); *In re Detention of Kortte*, 317 Ill. App. 3d 111, 115-16 (2000). Substantive due process, however, does not mandate that the rights or advantages granted to the prosecution and the defense be in absolute symmetry at every stage of a criminal proceeding, only that the overall total balance between each side be designed to achieve the goal of a fair trial. See *Harbin*, 250 F.3d at 540; *Tyson*, 50 F.3d at 441. Nevertheless, a shift at just one stage of a criminal trial as to the rights or advantages granted to each side might so skew the balance of rights or advantages in favor of the prosecution that it deprives the defendant of the right to a fair trial. See *Harbin*, 250 F.3d at 540; *Tyson*, 50 F.3d at 441.

¶ 22    After having reviewed the record in the present case, we find that the trial court did not deprive defendant of equal protection or due process by granting the State's midtrial request to remove Juror B. from the jury for cause. The record clearly shows that a race-neutral reason existed for the removal of Juror B.—Juror B. had fallen asleep during the presentation of the

evidence. Although defendant points to Juror C. as a similarly situated juror who was not removed, the record abundantly shows that Juror B. and Juror C. were not similarly situated. In fact, the trial court specifically noted that Juror C.'s level of "nodding off" was nowhere near as bad as Juror B.'s. Furthermore, we are not persuaded by defendant's suggestion that the trial court failed to conduct a proper inquiry as to whether Juror B. had fallen asleep during the first witness's testimony. The trial court obtained input from the State, the defendant's attorney, and the victim advocate; checked to determine whether the jurors' actions had been recorded by the security cameras; and considered its own observations before ultimately making a specific finding that Juror B. had fallen asleep during the testimony of the witness. Contrary to defendant's assertion on appeal, there is no indication that the trial court was unaware of its ability to inquire further into the factual circumstances surrounding Juror B.'s conduct during the trial if the trial court chose to do so. Moreover, the facts in the present case do not in any way indicate that the trial court gave the State an improper, unfair, or outsized amount of control over the composition of the jury at any time during the course of the trial. Rather, the facts show that the trial court was required to make a difficult decision and to remove a juror for cause after that juror had fallen asleep during an important part of the trial. We, therefore, find defendant's argument on this issue to be without merit.

¶ 23        In reaching that conclusion, we note that we are not persuaded that a different result is mandated by the decisions in *Harbin* (cited above) or *People v. Brown*, 2013 IL App (2d) 111228—the two main cases cited by defendant in support of his argument on this issue. Both *Harbin* and *Brown* involved the prosecutions' midtrial use of a peremptory challenge (see *Harbin*, 250 F.3d at 537; *Brown*, 2013 IL App (2d) 111228, ¶ 1), which is not the situation before the court in the present case. Indeed, in both of those cases, the courts recognized,

although somewhat implicitly, that the result might have been different if the juror at issue had been removed for cause, rather than pursuant to a peremptory challenge. See *Harbin*, 250 F.3d at 539; *Brown*, 2013 IL App (2d) 111228, ¶ 31.

¶ 24                    B. Possible Consideration of an Improper Factor in Sentencing

¶ 25        As his second point of contention on appeal, defendant argues that the trial court erred in considering a fact inherent in the crime of which defendant was convicted as a factor in aggravation in defendant's sentencing. More specifically, defendant asserts that the trial court improperly found that the threat of force underlying the incident was a factor in aggravation at sentencing (that the conduct caused or threatened serious harm), even though that fact was an element of the offense of home invasion. Defendant acknowledges that he did not properly preserve that claim of error for appellate review but asks that this court review the error, nevertheless, under the second prong of the plain error doctrine. For all of the reasons stated, defendant asks that we vacate his sentence and remand this case for a new sentencing hearing.

¶ 26        The State argues that the trial court did not commit plain error in sentencing defendant in this case and that defendant's sentence was appropriate based upon the offense and defendant's criminal history. In support of that argument, the State asserts first that even though the trial court mentioned the allegedly improper factor in sentencing defendant, a remand for resentencing is not required because the record clearly shows that the trial court did not give significant weight to the improper factor. Second and in the alternative, the State asserts that although consideration of that factor would be improper in some circumstances, it was not improper under the circumstances of the present case where the trial court considered the factor when it was considering the nature and circumstances of the offense and the degree of harm. For

all the reasons set forth, the State asks that we honor defendant's forfeiture of this issue and that we affirm defendant's sentence.

¶ 27    The plain error doctrine is a very limited and narrow exception to the forfeiture or procedural default rule that allows a reviewing court to consider unpreserved error if either one of the following two circumstances is present: (1) a clear or obvious error occurred and the evidence in the case was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Walker*, 232 Ill. 2d 113, 124 (2009); *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007); *People v. Herron*, 215 Ill. 2d 167, 177-87 (2005); Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Under either prong of the plain error doctrine, the burden of persuasion is on the defendant. *Walker*, 232 Ill. 2d at 124. If the defendant fails to satisfy that burden, the forfeiture or procedural default of the issue must be honored. *Id.* The first step in any plain error analysis is to determine whether an error occurred. *Id.* at 124-25. To do so, a reviewing court must conduct a substantive review of the issue. *Id.* at 125.

¶ 28    Whether the trial court relied on an improper factor in sentencing a defendant is a question of law that is subject to *de novo* review on appeal. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. In general, although a trial court has broad discretion when imposing a sentence, it may not consider a factor that is inherent in the offense of which defendant has been convicted as an aggravating factor in sentencing defendant for that offense. *Id.* ¶ 9; *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). Doing so would constitute an improper double enhancement. See *Phelps*, 211 Ill. 2d at 12. The rule prohibiting such double enhancements is based on the

- 13 -

rationale that the legislature obviously already considered the factors inherent in the offense when setting the range of penalties for that offense and that it would be improper, therefore, to consider those factors once again as a justification for imposing a greater penalty. *Id.* The defendant bears the burden to establish that a sentence was based on an improper consideration. *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 9. On appeal, a reviewing court will not vacate a sentence that was based upon an improper factor and remand for resentencing if the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence. See *People v. Heider*, 231 Ill. 2d 1, 21 (2008).

¶ 29    In the present case, we need not determine whether the trial court improperly considered a factor inherent in home invasion when it sentenced defendant for that offense because we find that, even if the trial court did so, defendant's sentence should still be affirmed because the record clearly shows that the trial court gave insignificant weight to that allegedly improper factor.[3] Although the trial court mentioned the factor as being one of the three factors it was considering in aggravation, it is clear from the trial court's comments, especially those that the trial court made in denying defendant's motion to reconsider sentence, that the trial court's focus on the aggravating factors in sentencing was upon defendant's criminal history and his prior

---

[3]Although the State agreed that the trial court considered a factor inherent in the offense, we make no such determination in this case because we have found it unnecessary to do so. We have made no ruling upon whether the threat of force, which may be an element of home invasion depending on how the offense is charged, is the same as the factor in aggravation—that defendant's conduct caused or threatened serious harm. While not a determinative factor in our decision in this case, we note that our supreme court has indicated that it is permissible for a trial court to consider the force employed and the physical manner in which a victim's death was brought about (but not the end result—the fact of the victim's death) in applying the statutory aggravating factor that defendant's conduct caused serious harm to the victim when sentencing a defendant for voluntary manslaughter, an offense in which serious bodily harm was implicit in the offense. See *People v. Saldivar*, 113 Ill. 2d 256, 271 (1986).

felony convictions. We, therefore, reject defendant's argument on this issue and uphold the sentence imposed.

¶ 30                                   III. CONCLUSION

¶ 31            For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 32            Affirmed.

| | |
|---|---|
| **Cite as:** | People v. Grant, 2019 IL App (3d) 170185 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 16-CF-264; the Hon. John P. Vespa, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Matthew Lemke, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |