NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 180798-U

NOS. 4-18-0798, 4-18-0799 cons.

FILED
February 23, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Coles County |
| LARRY DRUM, | ) | Nos. 17CF71 |
| Defendant-Appellant. | ) | 17CF142 |
| | ) | |
| | ) | Honorable |
| | ) | Brien J. O'Brien, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) defendant forfeited his argument that the trial court improperly considered factors inherent in the offenses as aggravating factors at sentencing and (2) any error did not rise to the level of plain error.

¶ 2    In October 2018, defendant, Larry Drum, pleaded guilty to one count of participation in methamphetamine manufacturing (720 ILCS 646/15(a)(1) (West 2016)) (Coles County case No. 17-CF-71), and one count of resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2016)) (Coles County case No. 17-CF-142). The trial court sentenced defendant to consecutive terms of (1) 15 years' imprisonment in case No. 17-CF-71 and (2) 30 months' probation and 180 days in jail in case No. 17-CF-142. Defendant filed a motion to reconsider his sentence, which the court denied.

¶ 3    Defendant appeals, arguing the trial court improperly considered two factors inherent in the offenses to which he pleaded guilty: (1) that defendant's conduct threatened serious harm and (2) that defendant received compensation for participating in the manufacture of methamphetamine.

¶ 4    We affirm.

¶ 5                                I. BACKGROUND

¶ 6    In September 2018, the trial court conducted a combined status hearing. Defendant, at the time, had four felony cases pending against him. In Coles County case No. 17-CF-71 (hereinafter case No. 17-CF-71), the State charged defendant with one count of participation in methamphetamine manufacturing (720 ILCS 646/15(a)(1) (West 2016)), and one count of unlawful use of property for methamphetamine manufacturing (720 ILCS 646/35 (West 2016)). In Coles County case No. 17-CF-142 (hereinafter case No. 17-CF-142), the State charged defendant with single counts of (1) methamphetamine possession (720 ILCS 646/60(a) (West 2016)), (2) resisting a peace officer (720 ILCS 5/31-1(a-7) (West 2016)), (3) attempting to disarm a peace officer (720 ILCS 5/31-1a(b) (West 2016)), and (4) aggravated battery (720 ILCS 5/12-3.05(d)(4)(iii) (West 2016)). At the combined hearing, defendant's counsel informed the court that they were "in negotiations" and had "made an offer to the State."

¶ 7    In October 2018, defendant pleaded guilty to participation in methamphetamine manufacturing in case No. 17-CF-71 and resisting a peace officer in case No. 17-CF-142. In exchange for defendant's plea, the State agreed to dismiss the remaining charges and pending cases. The parties made no agreement as to sentence. For the factual basis of the plea, the parties stipulated to the "48-hour" or probable cause affidavits prepared by the arresting officers in each case.

¶ 8          According to the affidavit in case No. 17-CF-71, on February 17, 2017, Charleston police officer Brandon Spindler received a call from Coles County probation officer Andrew Shick advising "that probation was conducting a compliance check at [defendant's] residence *** and had located items related to the manufacture of methamphetamine." After recovering several items from the residence which later field tested positive for the presence of methamphetamine, Spindler "responded to the [Coles County] Jail to interview [defendant]." During their interview, defendant told Spindler "the meth lab material that had been located in his residence was from approximately 3 month[s] ago," and belonged to Jason Eaton. When Eaton asked defendant if he could use the residence to manufacture methamphetamine, defendant "accepted[,] with the agreement that Eaton provide [him] with .5 grams of meth upon completion."

¶ 9          According to the affidavit in case No. 17-CF-142, on April 17, 2017, Mattoon police officer Tim St. John responded to the 3600 block of Lakeland Boulevard in Mattoon, Illinois to assist with a vehicle stop being conducted by other Mattoon police officers and Coles County probation officers. Upon arriving at the scene, St. John observed officers "chasing [defendant] in the open field." After catching up to defendant in his patrol car, St. John ordered defendant to stop. Defendant did not comply, and St. John deployed his taser. St. John then placed defendant under arrest and "located two small plastic baggies in [defendant's] wallet with one containing a very small amount of white powder." The powder later field tested positive for the presence of methamphetamine.

¶ 10         On November 16, 2018, the trial court conducted a combined sentencing hearing. Various witnesses testified to the facts and circumstances of the offenses to which defendant pleaded guilty. A presentence investigation report (PSI) indicated defendant was 46 years old

and listed defendant's known adult criminal history, which included: a 1991 conviction for possession of liquor by a minor, for which he received 45 days in jail; a 1992 conviction for obstructing justice and destruction of evidence, for which he received 1 year of probation; two convictions in 1993 for burglary and damage to state property, for which he received a 3-year sentence in the Illinois Department of Corrections (DOC); four convictions in 2000 for unlawful possession of a controlled substance, theft, residential burglary, and unlawful possession of methamphetamine manufacturing material, resulting in 66 months' imprisonment; a 2003 conviction for theft, for which he received 2 years of conditional discharge; a 2004 conviction for possession of methamphetamine, for which he received 4 years of probation; a 2010 conviction for battery, for which he received 1 year of conditional discharge; and a 2012 conviction for possession of anhydrous ammonia, for which defendant received "Track 2 Drug Court." Finally, defendant had several traffic misdemeanors for driving with a suspended license.

¶ 11　　The PSI reflects, in an attempt to address his drug dependency, defendant was ordered to attend substance-abuse treatment numerous times at Central East Alcoholism and Drug Council in Charleston, Illinois between 2012 and 2018, and Heritage Behavioral Health Center in Decatur, Illinois in 2018. Defendant informed the report writer he began using methamphetamine in his twenties. Defendant admitted he "began manufacturing methamphetamine soon after he started using the drug to help support his habit." Following his criminal convictions in 2000 and his release from prison, defendant admitted "he once again started using the drug with his new wife," until he was placed on probation in 2004. In 2012, defendant reported "he briefly relapsed and got in more criminal trouble," and was sentenced to drug court. Defendant repeatedly violated the terms of his drug court agreement and was ordered to serve two consecutive weekends in county jail in October 2012 and February 2013, and 30

days in county jail in February 2014. While going through his second divorce, defendant reported using methamphetamine heavily again, "which led to new offenses *** in 2016." Defendant reported his most recent use of methamphetamine was in July 2018, "just prior to going to jail."

¶ 12          In case No. 17-CF-71, the State recommended a sentence of 22 years' imprisonment, noting defendant was subject to Class X sentencing and had a prior history of delinquency involving the same type of charges. In case No. 17-CF-142, the State recommended two years' imprisonment, pointing to defendant being released "on bail *** when he committed the resisting charge."

¶ 13          Defendant asked for probation, in part, due to him being "a nonviolent meth addict who's made the same mistake over and over again."

¶ 14          Defendant also made a statement in allocution accepting responsibility for his conduct. Defendant admitted to having "lied to friends, stolen, violated the trust of this community, left my boys without a father, emotionally abused the woman I loved, [and] let down the people who have cared enough to try and help me in every way possible." Defendant stated he would "take advantage of every opportunity I can get my hands on to better myself while incarcerated," and urged the trial court to "consider letting me come home soon, be a good father again to my boys, to show the people who love me and care about me that I'm still here, and be a positive member of our community again."

¶ 15          Before imposing sentence, the trial court stated the following:

              "The Court has considered the evidence presented today, the information
              contained in the Presentence Investigation report. I've considered the current
              financial impact of a sentence to the [DOC]. I've considered the evidence and

arguments offered in aggravation and mitigation; the arguments with regard to sentencing alternatives; considered [defendant's] statement of allocution; and his history, character, and attitude. With respect to the factors in mitigation, I find that it is arguable that a long term of imprisonment would entail excessive hardship to his dependents, and the reason I say arguable is because I don't know that I can say with great certainty that he has been a source of financial support to his children, especially recently, but I do concede that that is a potential factor in mitigation. With respect to factors in aggravation, I find that the defendant's conduct at least threatened serious harm. I find that the defendant received compensation for committing the offense in 17-CF-71, specifically he received a share of the meth—methamphetamine that was cooked in compensation for participating in that activity. I've considered another factor in aggravation is the defendant's history of prior delinquency or criminal activity. The criminal history is extensive. No one can argue to the contrary. [Defendant] has been sentenced to the [DOC] on many prior occasions, and if I counted correctly has faced at least 11 prior felony charges. In addition I find that a sentence is necessary to deter others from committing the same crime. And finally a factor in aggravation is that the defendant was convicted of a felony committed while he was released on bail or on his own recognizance pending trial. This is a difficult case and it appears *** you can be two different people. You know, you're an entirely different person when you're on drugs than you are when you're off, and *** I gave you chance after chance after chance, and that was after you had been given chance after chance after chance by other Judges, and I guess what's so frustrating to me

about this case is that, you know, you have shown potential. You have shown that you have potential for rehabilitation, but every time you have reverted to your—your old ways, and that's troubling to me, and I understand that that comes with addiction, but *** it's remarkable the amount of community resources that have been invested in you, drug court; multiple opportunities at treatment; other community sup—support, including members of the NA, AA community; The Mission House, so all of these resources have been offered to you, but we still wind up back in the same place, and that's what's frustrating. I would agree to—with [defense counsel] for the most part that your crimes have primarily been nonviolent. I certainly am concerned about the threat of harm that comes along with a meth lab and I—I recognize this is kind of a—what we'll call an old school meth lab and—but certainly a threat of serious harm. Anytime that you flea [*sic*] from law enforcement there's going to be a threat of harm, and so that concerns me, and my biggest concern is how can I be sure that you'll remain the person you are while sober because each time you've been given an opportunity *** you reverted to your old ways, committed new offenses, and fled from the police or at least hid from them, so while you have *** some potential for rehabilitation, I don't know how many more chances you can be given. At some point it has to stop, and you have to suffer the consequences, *** and I do acknowledge that you have taken some responsibility for your actions by pleading guilty. I do believe that your statement of allocution today was sincere, and I believe that your [*sic*] sincere in your interests in remaining sober, and I wish I had the magic formula for you as to how you're going to do it, and I don't, and I don't know anybody

- 7 -

who does frankly, but that's why I gave you chance after chance after chance, and I do—I do consider Sergeant Beadles letter as being significant because she took the time to write me that letter to say, you know what, [defendant] has been here many times over many months and we haven't had a problem with him, so that shows me at least in some respect your potential for rehabilitation, but it doesn't excuse or forgive your omissions I'll call them."

The court concluded by imposing consecutive sentences of (1) 15 years' imprisonment in case No. 17-CF-71 and (2) 30 months' probation and 180 days in jail in case No. 17-CF-142.

¶ 16 On November 20, 2018, defendant filed a motion to reconsider his sentence, arguing the sentence was excessive considering the evidence presented in aggravation and mitigation, and not "in keeping with alternatives available to the Court to assist the Defendant in his rehabilitation." The trial court denied defendant's motion.

¶ 17 This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19 On appeal, defendant argues the trial court erred by considering two factors inherent in the offenses to which he pleaded guilty: (1) that his conduct threatened serious harm and (2) that he received compensation for participating in the manufacture of methamphetamine.

¶ 20 Initially, we note defendant failed to object at sentencing or raise this issue in his motion to reconsider the sentence. Thus, the issue is forfeited on appeal. See *People v. Hestand*, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005) (holding that a defendant must object at trial and raise the issue in his posttrial motion to preserve the issue for review). In his brief, however, defendant argues the issue should be addressed as a matter of plain error.

¶ 21        "[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that it deprived the defendant of a fair sentencing hearing." *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010). Under both prongs of the plain-error analysis, the burden of persuasion remains with the defendant. *People v. Wilmington*, 2013 IL 112938, ¶ 43, 983 N.E.2d 1015. As the first step in the analysis, we must determine "whether there was a clear or obvious error at trial." *People v. Sebby*, 2017 IL 119445, ¶ 49, 89 N.E.3d 675; see also *People v. Eppinger*, 2013 IL 114121, ¶ 19, 984 N.E.2d 475. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272. "[T]he plain error rule is not a general savings clause for any alleged error, but instead is designed to address *serious injustices*." (Emphasis in original.) *People v. Williams*, 299 Ill. App. 3d 791, 796, 701 N.E.2d 1186, 1189 (1998).

¶ 22        The question of whether the trial court relied on improper factors in imposing defendant's sentence presents a question of law, which we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22, 979 N.E.2d 1014. "A court is not required to refrain from any mention of sentencing factors that constitute elements of the offense." *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 52. The defendant has the burden "to affirmatively establish that the sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943, 904 N.E.2d 1022, 1028 (2009).

¶ 23　　　　"[A] reviewing court will not vacate a sentence that was based upon an improper factor and remand for resentencing if the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Grant*, 2019 IL App (3d) 170185, ¶ 28, 147 N.E.3d 141. When making this determination, courts have considered: "(1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor[ ] and (2) whether the sentence received was substantially less than the maximum sentence permissible by statute." *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18.

¶ 24　　　　Section 5-5-3.2(a) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a) (West 2016)) provides a list of factors which a trial court may consider in aggravation as reasons to impose a more severe sentence. Here, the trial court stated it found the following factors applied in defendant's case: (1) "the defendant's conduct at least threatened serious harm," (2) "the defendant received compensation for committing the offense," (3) "the defendant's history of prior delinquency or criminal activity," (4) "a sentence is necessary to deter others from committing the same crime," and (5) "the defendant was convicted of a felony committed while he was released on bail or on his own recognizance pending trial." See 730 ILCS 5/5-5-3.2 (a)(1), (2), (3), (7), (12) (West 2016). Citing the court's comments regarding the threat of serious harm and receipt of compensation, defendant asserts that "the court's reliance on these factors to impose a more severe sentence was an impermissible double enhancement."

¶ 25　　　　Section 15(a)(1) of the Methamphetamine Control and Community Protection Act provides, "It is unlawful to knowingly participate in the manufacture of methamphetamine with the intent that methamphetamine or a substance containing methamphetamine be produced." 720

ILCS 646/15(a)(1) (West 2016). In *People v. Marzonie*, 2018 IL App (4th) 160107, ¶ 43, 115 N.E.3d 270, this court expressly stated:

> "Under the plain language of the [Methamphetamine Control and Community Protection] Act, one can be guilty of participating in the manufacture of methamphetamine merely by *assisting* in the production of methamphetamine. This assistance could occur in many forms such as (1) supplying the raw materials to manufacture methamphetamine; (2) providing the knowledge, equipment, or capital to manufacture methamphetamine; or (3) consenting to the manufacture of methamphetamine on your property. An individual who assists in this capacity could be guilty of participation in methamphetamine manufacturing without ever possessing methamphetamine or a substance containing methamphetamine." (Emphasis in original.).

¶ 26       Accordingly, we do not find, as defendant claims, that "the receipt of methamphetamine was inherent in the offense of participating in the manufacturing of methamphetamine," and we agree with the State defendant was compensated for his role in the offense outside that which is inherent in the offense. Defendant's receipt of methamphetamine in exchange for the use of his residence to manufacture methamphetamine was inessential to the offense and clearly compensation. Had defendant consented to the use of his residence to manufacture methamphetamine for free, it still would have been unlawful participation in methamphetamine production. See 720 ILCS 646/15(a)(1) (West 2016). Thus, the trial court did

not err by considering compensation as an aggravating factor under the circumstances of this case. See 730 ILCS 5/5-5-3.2(a)(2) (West 2016).

¶ 27    Likewise, defendant fails to show the trial court improperly considered the threat of serious harm at sentencing. Rather, the court's comments appear to be a reiteration of a statutory aggravating factor (see 730 ILCS 5/5-5-3.2(a)(1) (West 2016)). The court made no emphatic comments in reciting its consideration of the threat of serious harm and—while the court did mention it as *an* aggravating factor—the court failed to expand or indicate a primary focus on this factor as the basis for the sentence imposed. See *People v. O'Toole*, 226 Ill. App. 3d 974, 993, 590 N.E.2d 950, 963 (1992). Further, the court later noted its concern "about the threat of harm that comes along with a meth lab," and recognized that "[a]nytime *** you flea [*sic*] from law enforcement there's going to be a threat of harm," reflecting its understanding that, although the threat of serious harm can be an aggravating factor, here it is inherent in the offenses.

¶ 28    Even if the trial court improperly considered factors inherent in the offenses, defendant fails to prove that absent consideration of these factors, the sentencing hearing was closely balanced. As an adult, defendant had a criminal history stretching back at least 30 years, over half of his life, to 1991. He told the probation department he was using methamphetamine in his twenties and continued to use the drug until July 2018. He was ordered to attend numerous substance abuse programs at multiple rehabilitation facilities between 2012 and 2018. His first convictions for unlawful possession of a controlled substance and possession of methamphetamine manufacturing material were in 2000, and since that time, he was convicted of possession of methamphetamine in 2003, and possession of anhydrous ammonia in 2012. Having previously received sentences of 1 year of probation, 3 years' imprisonment, 66 months'

imprisonment, 2 years of conditional discharge, 4 years of probation, 1 year of conditional discharge, and drug court, defendant was not deterred from participating in manufacturing methamphetamine, for which he was now facing the possibility of anywhere from 6 to 30 years in the penitentiary.

¶ 29        Ultimately, defendant's history and personal choices sealed his fate. The trial court emphasized defendant's extensive criminal history and flagrant disregard for the law, as evidenced by his previous terms of imprisonment and "at least 11 prior felony charges." The court also emphasized defendant's failure to conform to a law-abiding life, despite being given "chance after chance after chance," and afforded a "remarkable" amount of community resources. Importantly, we point out defendant's sentence falls well within the statutorily prescribed range for his participation in the manufacture of methamphetamine; his 15-year sentence was 15 years less than the maximum sentence for which he was eligible (see 730 ILCS 5/5-4.5-25(a) (West 2016)), and a middle-range sentence hardly leads us to infer a reasonable probability exists that his sentence might have been less had the trial court refrained from mentioning the alleged improper factors. To the contrary, the court focused on defendant's miserable criminal history, his continued involvement in the manufacture and use of methamphetamine, and the need to deter others.

¶ 30        Having found there was no error, let alone a clear and obvious one, our plain error analysis need go no further. See *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213 (without error there can be no plain error). Defendant argues in the alternative we should excuse his forfeiture by finding counsel's failure to properly preserve the issue for appellate review constitutes ineffective assistance of counsel. In the absence of any error, there is no need to address the oft-cited two-pronged test in *Strickland v. Washington*, 466 U.S. 668 (1984), *i.e.*,

(1) that counsel's performance was deficient and (2) that the deficient performance prejudiced defendant. *Strickland*, 466 U.S. at 687. Failure to establish either precludes a finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11, 989 N.E.2d 192. Absent error, there is no deficiency.

¶ 31                                  III. CONCLUSION

¶ 32          For the foregoing reasons, we affirm the trial court's judgment.

¶ 33          Affirmed.