2021 IL App (1st) 191109-U

No. 1-19-1109

Order filed April 19, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 04323 |
| | ) | |
| JOSEPH RUTLEDGE, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's sentence is affirmed over his contentions that it is excessive and that the trial court improperly considered the inherent factor of dangerousness of drug use in aggravation.

¶ 2   Following a 2019 jury trial, defendant Joseph Rutledge was found guilty of delivery of less than one gram of heroin (720 ILCS 570/401(d)(i) (West 2016)) and, based on his criminal history, sentenced to a Class-X term of 12 years in prison. On appeal, defendant contends that his sentence is excessive and the result of the trial court improperly considering the dangerousness of drug use,

a factor inherent in the offense of delivery of a controlled substance. For the reasons that follow, we affirm.

¶ 3     Defendant's conviction arose from the events of February 24, 2017. Following his arrest, defendant was charged by indictment with two counts of delivery of less than one gram of heroin. Prior to trial, the State nol-prossed the count alleging that the delivery occurred within 1000 feet of a church.

¶ 4     At trial, Chicago police sergeant Melvin Ector testified that on the evening in question, he was working as an undercover "buy officer" as part of a team of about 10 officers, conducting a narcotics investigation in the area of 79th Street and Phillips Avenue. About 6:50 p.m., Ector encountered defendant, whom he identified in court. Ector asked defendant if he knew where he could get "defense," which Ector explained was street terminology for heroin.

¶ 5     Defendant asked Ector how many bags he wanted, to which Ector replied two. Ector then followed defendant northbound and let defendant use his phone. After defendant completed a phone call, he told Ector to follow him to Phillips Avenue, where they would meet "the guy with the 'defense.' " As they walked through an alley, Ector gave defendant a prerecorded $20 bill.

¶ 6     Defendant told Ector to wait and then walked to a group at the corner. Defendant gave the $20 bill to a man and, in exchange, received two small objects. Ector approached defendant, and as they walked down the street together, defendant gave Ector two clear bags marked with ice cream cones and containing white powder.

¶ 7     Ector gave a prearranged signal to the surveillance officers on his team. He then walked to 79th Street, where he was picked up by a surveillance officer. Ector learned that enforcement

officers had stopped someone based on his signal of a positive narcotics transaction. He was driven to a nearby location, where he identified defendant as the man who sold him suspect heroin.

¶ 8     Ector identified People's Exhibit 1 as an inventory bag containing the two plastic bags marked with ice cream cones that he had received from defendant. He identified People's Exhibit 2 as a disk containing surveillance footage of his interactions with defendant. The surveillance footage was taken from a covert vehicle. The video footage, which contained three files, was played for the jury while Ector narrated the events it depicted.

¶ 9     Ector testified that the first file showed him approaching defendant, engaging in conversation with him, and then walking down a sidewalk with him. The second file depicted Ector standing on a sidewalk alone, waiting while defendant talked with the group on the corner. The third file depicted Ector and defendant walking along a sidewalk together, behind parked cars. Ector explained that while they were behind a parked car, out of view of the camera, defendant handed him the suspect heroin. The video footage, which is included in the record on appeal, depicts Ector's interactions with defendant as described in Ector's testimony.

¶ 10    Chicago police officer Edwin Utreras testified that he followed Ector in a car and saw him speaking with defendant, whom he identified in court. After Ector and defendant walked through an alley, Utreras saw Ector give a prearranged signal that a positive transaction had occurred. Shortly thereafter, Utreras picked up Ector nearby. Ector radioed a description of the offenders to the rest of the team and then handed Utreras two bags marked with ice cream cones containing suspect heroin. Utreras inventoried the bags when he returned to the station.

¶ 11    Daniel Beerman, a forensic scientist, testified that he received People's Exhibit 1, a bag containing two Ziploc bags of powder, in a heat-sealed condition. He tested the contents of the two bags and determined that they contained 0.3 grams of heroin.

¶ 12    Defendant made a motion for a directed verdict, which the trial court denied. Defendant did not testify or present evidence. The jury found defendant guilty.

¶ 13    Defense counsel filed a posttrial motion. Thereafter, defendant elected to proceed *pro se* and filed a *Krankel* motion, alleging that his trial counsel was ineffective. Following an initial inquiry, the trial court denied the motion. Counsel was reappointed and refiled the motion for a new trial, which the trial court denied.

¶ 14    At sentencing, the State indicated that an amendment to the presentence investigation (PSI) report was needed. The State then reviewed defendant's criminal history, which, as detailed in the PSI report, was comprised of the following: a 2015 conviction for domestic battery, for which defendant received a sentence of 364 days; a 2015 conviction for criminal trespass to land, for which he received a sentence of 10 days; a 2014 conviction for "resisting / obstructing peace officer / correctional emp," for which he received a sentence of 9 days; a 2013 conviction for theft, for which he received a sentence of 20 days; a 2013 conviction for possession of cannabis, for which he received a sentence of 2 days; a 2004 conviction for "home invasion / armed / force / residential burglary / aggravated domestic battery / agg battery / great bodily harm domestic battery / bodily harm," for which he received sentences of 10 years ("on great bodily harm") and 15 years; a 2002 conviction for possession of a controlled substance, for which he received a sentence of 5 years; a 2000 conviction for indecent exposure urination, for which he received a sentence of 6 months of conditional discharge; a 2000 conviction for domestic battery, for which he received a sentence of

72 days; a 1997 conviction for possession of a controlled substance, for which he received a sentence of 6 years; a 1995 conviction for robbery, for which he received a sentence of 5 years; a 1991 conviction for robbery and aggravated battery, for which he received a sentence of 5 years; and a 1991 conviction for vehicular invasion, for which he received a sentence of 5 years.

¶ 15    The PSI report indicated that defendant had a good relationship with his parents and siblings and had an "ok" childhood. He denied a history of abuse or neglect. He reported that his mother died when he was 14 years old, after which he moved in with his oldest sister and the Department of Children and Family Services became involved. Defendant never married but has eight children, with whom he has a "wonderful" relationship when he is actually around them.

¶ 16    Defendant attended school until tenth grade, when he was incarcerated, and then earned a GED. Prior to his most recent arrest, he worked as a sales associate at Boost Mobile for three years. Defendant admitted to being a gang member and stated most of his friends were affiliated with gangs. He reported being in great overall physical health. He stated he was diagnosed with schizophrenia in 1992 but was never prescribed any psychotropic medication.

¶ 17    Defendant reported that he first tried alcohol around age 13. He consumed about two six-packs of beer per week but never had any alcohol-related social, family, or work problems. He began using heroin at age 19. He would use heroin every day before he was incarcerated, and his family members were concerned about his drug usage. Defendant related that his drug use has caused problems with his family relationships, romantic relationships, and employment, and has taken a toll on his memory and eyesight. He received drug treatment in prison but could not remember the exact timing.

¶ 18 In aggravation, the State argued that defendant's criminal history exhibited violence and an inability or unwillingness to comply with the law. The State further argued that a sentence "far above" the minimum was necessary to protect the public.

¶ 19 In mitigation, defense counsel argued that the instant offense was nonviolent. Counsel highlighted that defendant had substantial ties to his family and community, had obtained a GED, and had been employed. Counsel stated that defendant's major impediment to rehabilitation was his history of drug abuse. However, counsel noted that defendant had received drug treatment in the past and stated that he "would like additional drug treatment."

¶ 20 In announcing sentence, the trial court stated that it had reviewed the PSI report. It explained that due to defendant's criminal history, Class-X sentencing was mandatory. The court briefly restated the facts of the case and said it was considering those facts and defendant's criminal background as aggravation. The court recited a summary of defendant's prior convictions and noted that defendant's criminal background was "almost continuous" and included "numerous crimes of violence," as well as "more minor crime[s]" that showed his unwillingness "to abide by society."

¶ 21 In mitigation, the trial court considered that defendant was employed at times when he was not incarcerated and that he had obtained a GED. The court also noted that defendant had a good relationship with his family, had been diagnosed with schizophrenia, and had been using heroin since he was 19 years old.

¶ 22 The court addressed the statutory factors in aggravation and mitigation, commencing its remarks on those factors as follows:

"In considering further the statutory factors in aggravation and mitigation, in aggravation, the conduct caused or threatened serious harm, I agree with you this isn't a violent offense in the terms of no one was shot, no one was stabbed. This isn't a different offense he's been convicted of in the past. This isn't another robbery, another aggravated battery, or vehicular invasion. However, heroin does cause harm to other people in society, and to that extent I will say his conduct did threaten harm."

The court then reviewed other statutory factors, finding that defendant had a substantial history of criminal activity, much of it violent and "almost continuous." The court also found that the sentence it was imposing was necessary to deter others, and that imprisonment would cause hardship to defendant's dependents.

¶ 23    The court concluded with the following remarks:

"The sentencing range here is 6 to 30 years. I will take into consideration [the] mitigation you have presented. I do not believe that a term in the higher range is appropriate. I don't believe a term in the lower range is appropriate. Certainly there is a lot of criminal activity here, but I will take into consideration the circumstances of this crime that I will not characterize it as a violent crime as you said, Counsel. I believe an appropriate sentence is 12 years in the Illinois Department of Corrections[.]"

¶ 24    Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 25    On appeal, defendant contends that his sentence is excessive.

¶ 26    A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference on review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Sentencing decisions are entitled to great deference on appeal because the trial court is in

a superior position to fashion an appropriate sentence based on firsthand consideration of the relevant sentencing factors, including the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). Although the trial court's consideration of mitigating factors is required, it has no obligation to recite each factor and the weight it is given. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Absent some indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigating factors presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 27    In reviewing a defendant's sentence, this court will not reweigh the aggravating and mitigating factors and substitute our judgment for that of the trial court merely because we would have weighed these factors differently. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20. A sentencing determination will not be disturbed absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). Sentences that fall within the permissible statutory range may be deemed to be the result of an abuse of discretion only where they are "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210.

¶ 28    Here, we find that the trial court did not abuse its discretion in sentencing defendant to 12 years' imprisonment. Due to his criminal background, defendant was subject to Class X sentencing, with an applicable sentencing range of 6 to 30 years. 730 ILCS 5/5-4.5-25(a), 5-4.5-95(b) (West 2018). Because the 12-year sentence imposed in this case was within the statutory sentencing range, it is presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 29    Defendant does not dispute that his sentence fell within the permissible sentencing range and is presumed proper. Rather, he argues that his 12-year sentence was unwarranted to punish his "run-of-the-mill" narcotics sale of a small amount of heroin, and was not necessary to deter others. He asserts that the court, in imposing sentence, overemphasized his criminal history, as there was a long period between 2004 and 2013 where he had no convictions and his last felony conviction, in 2004, was 13 years before he committed the instant offense. Defendant maintains that the trial court did not give enough weight in mitigation to the factors that he had steady employment despite his heroin addiction and mental illness, and had earned his GED while incarcerated.

¶ 30    The record shows that the trial court was well aware of the mitigating factors identified by defendant on appeal. All of these mitigating factors—defendant's employment history, heroin addiction, and mental illness—were included in the PSI report, which the trial court stated it had reviewed prior to imposing sentence. In addition, defense counsel highlighted in mitigation that defendant had substantial ties to his family and community, had obtained a GED, and had been employed. Counsel also noted that while defendant had a history of drug abuse, he had received drug treatment in the past and expressed interest in additional drug treatment. Finally, while we may presume that the trial court properly considered all relevant mitigating factors presented (*Sauseda*, 2016 IL App (1st) 140134, ¶ 19), here, the trial court expressly noted that it considered defendant's employment, attainment of a GED, relationship with his family, diagnosis of schizophrenia, and history of drug abuse.

¶ 31    In addition to considering the evidence in mitigation, the trial court also made clear at sentencing that it was disturbed by defendant's criminal history, especially because it was "almost continuous" and included "numerous crimes of violence," as well as "more minor crime[s]" that

showed his unwillingness "to abide by society." A defendant's criminal history is a proper aggravating sentencing factor (730 ILCS 5/5-5-3.2(a)(3) (West 2018)) and criminal history, alone, may "warrant sentences substantially above the minimum" (*People v. Evangelista*, 393 Ill. App. 3d 395, 399 (2009)). In this case, defendant maintains that it was a mischaracterization for the trial court to call his criminal history "almost continuous" because a number of years had elapsed between his convictions in 2004 and 2013. However, the PSI report reveals that in 2004, defendant was sentenced to a term of 15 years in prison. We agree with the State that defendant's incarceration accounts for the majority of the time lapse between his 2004 and 2013 convictions, even if, *arguendo*, he only served 50% of his time. Moreover, while defendant is correct that his last felony conviction was in 2004, 13 years before he committed the instant offense, there was nothing improper in the trial court considering his multiple, subsequent misdemeanor convictions in aggravation.

¶ 32    Given that all of the mitigating factors defendant raises on appeal were discussed in defendant's PSI report and defense counsel's arguments in mitigation, defendant essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court. As noted above, this we cannot do. See *Busse*, 2016 IL App (1st) 142941, ¶ 20 (a reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently).

¶ 33    Defendant next contends that the trial court erred in considering in aggravation the inherent factor of heroin's danger to society. He asserts that the fact that heroin harms people is applicable to all heroin sales, and there was nothing particular about this sale that differentiated it from others. Defendant argues that the legislature already considered the implicit harm resulting from the sale

of heroin when classifying the offense as a Class 2 felony and, therefore, the statutory aggravation factor of causing or threatening serious harm was inapplicable to his offense. He asserts that it cannot be determined from the record that the weight the trial court placed on this improper factor did not lead to a greater sentence. As such, he maintains that his sentence must be vacated.

¶ 34    At sentencing, a trial court may not consider as aggravating evidence a factor that is implicit in the offense for which the defendant has been convicted. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47. However, because sentences vary in accordance with the circumstances of the particular offense, this rule is not meant to be applied rigidly. *Id.* When determining whether a trial court considered improper factors, we focus on the entire record, rather than on a few words or statements made by the court at sentencing. *Id.* Moreover, even if the trial court considered an improper factor, a sentence will be affirmed if we can determine from the record that the weight placed on that factor was so insignificant that it did not lead to a greater sentence. *People v. Heider*, 231 Ill. 2d 1, 21 (2008); *People v. Grant*, 2019 IL App (3d) 170185, ¶ 28. Whether the trial court relied on an improper factor in imposing a sentence is a question of law subject to *de novo* review. *Grant*, 2019 IL App (3d) 170185, ¶ 28.

¶ 35    In this court, defendant contends that the trial court improperly considered a factor inherent in the delivery of heroin when it stated, "[H]eroin does cause harm to other people in society and to that extent I will say his conduct did threaten harm." The State counters that this remark was not improper, but rather, reflected that the court properly considered the nature and circumstances of the offense. The State also asserts that the trial court's larger discussion of whether defendant's conduct threatened harm suggests that it treated this factor in mitigation, as it also stated that it agreed with defendant that "this isn't a violent offense."

¶ 36    Here, we need not determine whether the trial court improperly considered a factor inherent in the delivery of heroin when it sentenced defendant because we find that even if the trial court did so, the record plainly shows that it gave insignificant weight to that allegedly improper factor. See *Grant*, 2019 IL App (3d) 170185, ¶ 29. Contrary to defendant's argument, the record shows the trial court did not emphasize the harm caused to society by heroin, but rather, was dismissive of that factor, as evidenced by its observation—made twice—that the instant crime was not violent. See *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18. While the trial court did comment in passing that heroin causes harm to society, it is clear from the entirety of its remarks that its focus and primary consideration in fashioning a sentence was defendant's extensive criminal history, which it twice noted included numerous crimes of violence and was "almost continuous." Given that the trial court did not place any weight on the factor of the dangers of heroin to society, we find that defendant's sentence should be affirmed. See *Grant*, 2019 IL App (3d) 170185, ¶ 29.

¶ 37    In light of the facts of this case, the interests of society, and the trial court's stated consideration of mitigating and aggravating factors, we cannot find that defendant's sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Accordingly, we find no abuse of discretion.

¶ 38    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 39    Affirmed.