Docket No. 93830–Agenda 1–November 2003.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant and Cross- Appellee, v. KEVIN PHELPS, Appellee and Cross-Appellant.

Opinion filed January 23, 2004.

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Kevin Phelps, was convicted by a jury of heinous battery (720 ILCS 5/12–4.1(a) (West 1996)) and aggravated kidnaping (720 ILCS 5/10–2(a)(3) (West 1996)). The circuit court of Cook County sentenced defendant to consecutive prison terms of 15 years for the aggravated kidnaping and 30 years for the heinous battery. The appellate court affirmed defendant’s convictions but modified the sentences to run concurrently. 329 Ill. App. 3d 1. We allowed the State’s petition for leave to appeal. 177 Ill. 2d R. 315(a).

BACKGROUND

P.H., a high school student, testified that, in late 1996, she befriended defendant, a paraplegic who she knew also as “Sniper.” During the summer of 1997, P.H. visited defendant almost every other day at his townhouse on South St. Lawrence in Chicago. In August 1997, P.H. was grounded and told she could not see defendant anymore.

On September 4, 1997, as P.H. was leaving school, two men she had never seen before called out to her, using her nickname. One of the men said, “Folks said come get your stuff.” P.H. knew that the man was referring to defendant, as she had left some things at defendant’s house. She told the men that she would pick it up later and got on a bus to head home. When she exited the bus, the same two men drove up behind her. One of the men grabbed P.H.’s jacket and told her to get into the car. The two men drove her to defendant’s house, escorted her inside, and then left her alone with defendant.

Defendant asked P.H. where she had been, what she had been doing, and whom she had been seeing for the past several weeks. Although she explained to defendant that her sister had grounded her, defendant continued to interrogate her for the next hour. During this time, defendant twice asked P.H. to get him a glass of water from the kitchen, and P.H. agreed. Defendant then told P.H. to take off her clothes. When she refused, defendant pulled out a gun, placed it his lap, and again asked P.H. to take off her clothes. This time she complied. Once P.H.’s clothes were off, defendant threw a cup of flammable liquid on her and set her on fire. P.H. ran to an upstairs bathroom, climbed into the tub, and extinguished the flames with water. Hoping to jump out the window, P.H. searched for some clothes. Unable to find any, she had no choice but to return to the room that defendant occupied.

P.H. remained with defendant for approximately an hour, during which time she repeatedly asked for her clothes so that she could leave. P.H. explained that she did not leave immediately after the burning both because defendant would not return her clothes and because defendant had a gun. Defendant gave P.H. some Vaseline to rub on her wounds and, when that proved ineffective, poured hydrogen peroxide over her burns. Eventually, defendant asked P.H. whether anyone knew where she was, to which she replied, “my family would think that this would be the first place I was because this was the place I was told not to come.” Defendant then asked P.H. what she would tell people if he “let [her] go.” P.H. assured defendant that she would blame her attack on someone else. Defendant then gave P.H. her clothes back, told her to get dressed, and allowed her to leave. On cross-examination, P.H. admitted that defendant never actually told her that she could not leave.

P.H. returned home around 8 p.m., screaming, “Sniper burnt me.” P.H.’s sister called an ambulance, and P.H. was taken to the hospital where she was diagnosed with second and third degree burns over 36 percent of her body. P.H. spent two weeks in the intensive care unit and two months in a rehabilitation center. The burns and resulting skin grafts left P.H. with permanent and prominent scarring over 80% of her body.

Defendant, in turn, testified that he did not see P.H. on September 4, 1997, and that he was not at the South St. Lawrence townhouse at all that day. According to defendant, he had lived in the South St. Lawrence townhouse until June of 1997, at which point he moved onto East 62nd Street with his mother, his brother, and his stepfather. On the day of P.H.’s attack, he never left the house on East 62nd Street. Although P.H. had been his girlfriend for several months at the time of the attack, defendant had not seen her in several weeks because she was grounded. He first learned of P.H.’s injuries at approximately 10:30 p.m. on the night of September 4, 1997, when the police arrived at the house on East 62nd Street to question him.

Defendant was charged with kidnaping (720 ILCS 5/10–1(a)(1) (West 1996)), aggravated kidnaping (720 ILCS 5/10–2(a)(3) (West 1996)), heinous battery (720 ILCS 5/12–4.1(a) (West 1996)), and attempted first degree murder (720 ILCS 5/8–4(a), 9–1(a)(1) (West 1996)). The jury convicted defendant of aggravated kidnaping and heinous battery, and the trial court sentenced defendant to consecutive prison terms of 15 and 30 years respectively.

On appeal, defendant argued that (1) the State failed to prove him guilty of aggravated kidnaping beyond a reasonable doubt; (2) the prosecutor misstated the evidence in closing argument; (3) the imposition of consecutive sentences constituted an improper double enhancement; and (4) the use of the same factor to enhance both of the crimes for which he was convicted constituted an improper double enhancement. The appellate court rejected all but the consecutive sentencing argument. Accordingly, it affirmed defendant’s convictions but modified the sentences to run concurrently. 329 Ill. App. 3d at 12.

Before this court, the State argues that the imposition of consecutive sentences in this case does not constitute a double enhancement. By way of cross-appeal, defendant renews his arguments with respect to the sufficiency of the evidence, the prosecutor’s closing argument, and the use of the same factor to enhance both of the crimes for which he was convicted.

ANALYSIS

1. Sufficiency of the Evidence

We begin with the sufficiency of the evidence. In assessing the sufficiency of the evidence to sustain a verdict on appeal, a reviewing court’s inquiry is “whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” (Emphasis in original.) 
Jackson v. Virginia
, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979); 
People v. Cooper
, 194 Ill. 2d 419, 430-31 (2000). Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses. 
Cooper
, 194 Ill. 2d at 431. Indeed, it is the responsibility of the trier of fact to “fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” 
Jackson
, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.

To obtain a conviction for aggravated kidnaping, the State must prove that the defendant (1) knowingly and secretly confined the victim against her will, and (2) inflicted great bodily harm upon the victim. 720 ILCS 5/10–1(a)(1), 10–2(a)(3) (West 1996). Here, defendant concedes that he inflicted great bodily harm when he doused P.H. with a flammable liquid and set her ablaze. Nevertheless, he insists that P.H.’s ordeal in the South St. Lawrence townhouse was neither secret nor against her will. As for the visit not being secret, defendant notes that her presence at the South St. Lawrence townhouse was known to the two men who forced her into the car and delivered her to defendant. In addition, defendant relies upon the fact that, when defendant asked P.H. whether anyone knew where she was, she replied, “my family would think that this would be the first place I was because this was the place I was told not to come.” As for the visit not being against her will, defendant relies heavily upon P.H.’s admission that defendant never actually told her that she could not leave. In addition, defendant argues that, although P.H. could have left during either of her trips to the kitchen for a glass of water, she returned to defendant’s presence both times. Finally, defendant maintains that his paraplegia rendered him physically unable to prevent P.H. from leaving.

For purposes of the aggravated kidnaping statute, secret confinement may be shown by proof of either the secrecy of the confinement or the secrecy of the place of confinement. 
People v. Pasch
, 152 Ill. 2d 133, 187 (1992). In this context, “secret” has been defined as concealed, hidden, or not made public. 
Pasch
, 152 Ill. 2d at 187. “Confinement,” in turn, has been defined as “[t]he act of imprisoning or restraining someone.” Black’s Law Dictionary 294 (7th ed. 1999); see also 
People v. Enoch
, 122 Ill. 2d 176, 196 (1988) (assessing “confinement” in terms of “restraint”). Viewed in a light most favorable to the State, the evidence here shows that P.H was forced into a car on her way home from school and delivered to defendant’s apartment against her will. Once P.H. was there, defendant brandished a gun, ordered P.H. to strip naked, set P.H. on fire, withheld the return of P.H.’s clothing for more than an hour after the burning, and released P.H. only after she agreed to blame her attack on a stranger. On these facts, a rational jury easily could have concluded that defendant knowingly and secretly confined P.H. against her will. Given that defendant concedes the infliction of great bodily harm, his conviction for aggravated kidnaping must be affirmed.

We are unpersuaded by defendant’s insistence that both the secrecy and the involuntariness of P.H.’s confinement “is very much in dispute.” To be sure, P.H. admitted that defendant never actually 
told 
her that she was not free to leave, and defendant’s paraplegia certainly limits his range of motion. Nevertheless, a rational trier of fact could conclude that, his paraplegia notwithstanding, defendant 
demonstrated
 that P.H. was not free to go by brandishing a gun, ordering her to strip naked, setting her on fire, and withholding the return of her clothing for more than an hour. Indeed, P.H. testified that, after extinguishing her burning torso in the upstairs bathroom, she “was trying to find something to put on so [she] could jump out the window.” A jury certainly could conclude that jumping out of a second-story window is not the typical exit strategy of a social guest who is free to come and go as she pleases. And while P.H. twice returned to defendant’s presence after going to the kitchen for a glass of water, she did so 
before
 defendant brandished the gun. Even assuming, then, that P.H. was not confined against her will when she returned with the glasses of water, a rational jury could conclude that P.H. was confined against her will when defendant brandished a gun and set the ensuing events in motion.

 As for secrecy, defendant’s case is hardly helped by the fact that P.H.’s presence at the South St. Lawrence townhouse was known to the two men who forced her into a car and delivered her to defendant’s doorstep. These men either knew what defendant was about to do, in which case they were accomplices, or they did not know, in which case P.H.’s confinement remained a secret even to them. Either way, a rational jury could conclude that, on the afternoon of September 4, 1997, P.H. was secretly confined in the South St. Lawrence townhouse. Moreover, P.H.’s assertion that “my family would think that this would be the first place I was because this was the place I was told not to come” is just as likely a bluff designed to secure her release as it is an objective statement of fact. When P.H. made this assertion, she was naked, suffering from third-degree burns over 36% of her body, attempting to secure the return of her clothing, and responding to her armed captor’s inquiry as to whether anyone knew where she was. We have no trouble affirming defendant’s aggravated kidnaping conviction.

2. Closing Argument

Defendant next argues that he was deprived of a fair trial when the assistant State’s Attorney made certain misleading statements during closing arguments. Specifically, defendant notes that (1) although P.H. twice testified that defendant never told her that she could not leave, the assistant State’s Attorney told the jury that he did; and (2) although P.H. testified that the two men who forced her into the car told her that “
Folks
” wanted to see her, the assistant State’s Attorney told the jury that P.H. was told that “
Sniper
” wanted to see her. According to defendant, these statements “undoubtedly had a prejudicial impact on the jury” and thereby denied him of his right to a fair trial.

To preserve an issue for review, a defendant must raise an objection both at trial and in a written posttrial motion. 
People v. Enoch
, 122 Ill. 2d 176 (1988). Here, defendant did neither. Moreover, defendant does not even attempt to argue that the alleged misstatements rise to the level of plain error. See 134 Ill. 2d R. 615(a). Accordingly, we find this issue waived. See 
People v. Nieves
, 192 Ill. 2d 487, 502-03 (2000).

3. Double Enhancement: Sentencing

Next, the State argues that the appellate court erred in concluding that the imposition of consecutive sentences in this case constituted an improper double enhancement. We agree.

Defendant was found guilty of aggravated kidnaping and heinous battery. The trial court sentenced defendant to consecutive prison terms of 15 years for the aggravated kidnaping and 30 years for the heinous battery. In imposing consecutive sentences, the trial court relied upon section 5–8–4(a) of the Unified Code of Corrections, which provides:

“The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury *** in which event the court shall enter sentences to run consecutively.” 730 ILCS 5/5–8–4(a) (West 1996).

On appeal, defendant argued that he was subjected to an improper double enhancement because the factor relied upon to impose consecutive sentences–the infliction of severe bodily injury–is already an element of the offenses for which he was convicted. The appellate court agreed and modified defendant’s sentences to run concurrently. 329 Ill. App. 3d at 12.

Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. 
People v. Ferguson
, 132 Ill. 2d 86, 96 (1989). Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing “a harsher sentence than might otherwise have been imposed.” 
People v. Gonzalez
, 151 Ill. 2d 79, 83-84 (1992). Such dual use of a single factor is often referred to as a “double enhancement.” 
Gonzalez
, 151 Ill. 2d at 85. The prohibition against double enhancements is based on the assumption that, in designating the appropriate range of punishment for a criminal offense, the legislature necessarily considered the factors inherent in the offense. 
People v. Rissley
, 165 Ill. 2d 364, 390 (1995). The double-enhancement rule is one of statutory construction (
Rissley
, 165 Ill. 2d at 390), and the standard of review therefore is 
de novo
 (
People v. Robinson
, 172 Ill. 2d 452, 457 (1996)).

A textbook example of double enhancement is found in 
People v. White
, 114 Ill. 2d 61 (1986). In 
White
, this court held that, although it is a statutory aggravating factor, the victim’s age cannot form the basis for an extended-term sentence where the defendant is convicted of aggravated battery of a child. 
White
, 114 Ill. 2d at 66. As 
White
 explained, in establishing aggravated battery of a child as a statutory offense separate from aggravated battery, the legislature included the victim’s age as an element of the offense. As importantly, the legislature attached a higher penalty to aggravated battery of a child (then a Class 2 felony) than it did to mere aggravated battery (a Class 3 felony). Thus, the victim’s age formed not only an element of the offense but also the basis for an enhanced penalty. By then using the victim’s age 
yet again
 as the basis of an extended-term sentence, the trial court did exactly what the double enhancement rule is designed to prevent–subjected the defendant to a harsher sentence than might otherwise have been imposed. 
White
, 114 Ill. 2d at 66.

Double enhancement also occurs when the same factor is used twice to elevate the severity of the offense itself. For example, in 
People v. Haron
, 85 Ill. 2d 261 (1981), the defendant committed a battery, which ordinarily is a Class A misdemeanor. See Ill. Rev. Stat. 1979, ch. 38, par. 12–3(b). However, because the defendant used a deadly weapon in the course of committing that battery, the State elevated the charge to aggravated battery, a Class 3 felony. See Ill. Rev. Stat. 1979, ch. 38, par. 12–4(e). The State then used the deadly weapon again to elevate the aggravated battery charge to armed violence, a Class X felony that occurs when a person commits a felony while armed with a dangerous weapon. See Ill. Rev. Stat. 1979, ch. 38, pars. 33A–2, 33A–3(a). In reviewing the propriety of these charges, this court explained that “the General Assembly did not intend that the presence of a weapon serve to enhance an offense from misdemeanor to felony and also to serve as the basis for charge of armed violence.” 
Haron
, 85 Ill. 2d at 278. Accordingly, the dismissal of the armed violence charge was affirmed. 
Haron
, 85 Ill. 2d at 280.

Applying these principles to the present case, we conclude that defendant’s consecutive sentences do not constitute a double enhancement. Defendant’s heinous battery charge alleged that, in the course of committing a battery, defendant knowingly caused P.H. to suffer severe and permanent disability by means of a flammable substance. Thus, the infliction of severe and permanent disability was used once to enhance battery, a Class A misdemeanor punishable by less than a year in prison, to heinous battery, a Class X felony punishable by 6 to 45 years in prison. Once defendant was convicted of heinous battery, however, no further enhancements occurred. Defendant stood convicted of a Class X felony punishable by 6 to 45 years in prison, and he was sentenced to a nonextended term of 30 years in prison. Likewise, defendant’s aggravated kidnaping charge alleged that, in the course of kidnaping P.H., defendant inflicted great bodily harm upon her. Thus, the infliction of great bodily harm was used once to enhance kidnaping, a Class 2 felony punishable by 3 to 7 years in prison, to aggravated kidnaping, a Class X felony punishable by 6 to 30 years in prison. Once defendant was convicted of aggravated kidnaping, however, no further enhancements occurred. Defendant stood convicted of a Class X felony punishable by 6 to 30 years in prison, and he was sentenced to a nonextended term of 15 years in prison. Thus, the severity of each offense was enhanced only once.

The fact that the trial court ordered defendant to serve his sentences consecutively does not change this outcome. To be sure, the consecutive sentencing order was premised on the fact that defendant “inflicted severe bodily injury” (see 730 ILCS 5/5–8–4(a) (West 1996)), an element of both aggravated kidnaping and heinous battery. Nevertheless, no double enhancement occurred because consecutive sentencing is not a sentencing enhancement. Again, a double enhancement occurs when a single factor is used both as an element of an offense and as a basis for imposing “a harsher sentence than might otherwise have been imposed.” 
Gonzalez
, 151 Ill. 2d at 83-84. In 
People v. Carney
, 196 Ill. 2d 518 (2001), this court specifically held that a defendant subject to consecutive sentencing “is not exposed to punishment beyond that authorized by the jury’s verdict, provided that the sentence for each separate offense does not exceed the maximum permitted by statute for that offense.” 
Carney
, 196 Ill. 2d at 532. This is because consecutive sentencing “determines only the manner in which a defendant will serve his sentences for multiple offenses.” 
Carney
, 196 Ill. 2d at 532. Thus, even when subject to consecutive sentencing, “[e]ach conviction results in a 
discrete sentence 
that must be treated 
individually
.” (Emphases added.) 
Carney
, 196 Ill. 2d at 530. In the preceding paragraph, we treated defendant’s discrete sentences individually and concluded that no double enhancements occurred. Under 
Carney
, no further inquiry is warranted.

We note that, even if defendant’s consecutive sentences did constitute a double enhancement, the appellate court still erred in modifying those sentences to run concurrently. The general prohibition against double enhancements is “merely a rule of statutory construction,” premised on the assumption that the legislature considered the factors inherent in the offense in fashioning the appropriate range of punishment for that offense. 
People v. Rissley
, 165 Ill. 2d 364, 390 (1995). Consequently, where the legislature clearly intends to enhance the penalty based upon some aspect of the crime, and such an intention is clearly expressed, there is no prohibition. 
Rissley
, 165 Ill. 2d at 390. In determining whether the legislature intended a double enhancement, we look to the statute itself as the best indication of the legislature’s intent. 
Rissley
, 165 Ill. 2d at 390-91. The best indication of legislative intent is the statutory language, given its plain and ordinary meaning.
 Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 479 (1994).

Under section 5–8–4(a), consecutive sentencing is mandated where “one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury.” 730 ILCS 5/5–8–4(a) (West 1996). In 
People v. Whitney
, 188 Ill. 2d 91 (1999), this court was asked to construe this provision and decide whether, in order to qualify for consecutive sentencing, the defendant must inflict great bodily harm in the course of committing the actual Class X or Class 1 felony. This court held that he must. 
Whitney
, 188 Ill. 2d at 98-99. Significantly, the next question was not whether consecutive sentencing applied 
even
 to those Class X and Class 1 felonies for which severe bodily harm is an element. Rather, the question was whether consecutive sentencing applied 
only
 to those Class X and Class 1 felonies for which severe bodily harm is an element. 
Whitney
, 188 Ill. 2d at 99. In holding that the statute was not so narrowly drafted, this court explained that “
any
 Class X or Class 1 felony that results in severe bodily injury being inflicted on the victim of that felony triggers consecutive sentences.” (Emphasis added.) 
Whitney
, 188 Ill. 2d at 99. Thus, in 
Whitney
, this court took it as a given that consecutive sentencing was intended to apply to Class X and Class 1 felonies for which severe bodily harm is an element. The only question was what additional Class X and Class 1 felonies are subject to consecutive sentencing.

 Again, where the legislature clearly intends to enhance the penalty based upon some aspect of the crime, and such an intention is clearly expressed, there is no prohibition. 
Rissley
, 165 Ill. 2d at 390. As 
Whitney
 teaches, the legislature clearly intended to make consecutive sentencing applicable to Class X and Class 1 felonies for which severe bodily harm is an element. Even assuming, then, that defendant’s consecutive sentences did constitute a double enhancement, they constituted a perfectly lawful double enhancement.

Accordingly, we reverse that portion of the appellate court’s opinion modifying defendant’s sentences to run concurrently.

4. Double Enhancement: Offenses

Finally, defendant raises another double-enhancement argument. This time, defendant argues that one of his convictions must be vacated because a single factor–the infliction of great bodily harm–was used to enhance both of the offenses for which he was convicted. In support, defendant notes that the single fact that he inflicted great bodily harm upon P.H. was used against him twice, once to elevate kidnaping to aggravated kidnaping and again to elevate battery to heinous battery. According to defendant, this constitutes an unlawful double enhancement.

We disagree. As explained above, the double-enhancement rule prohibits a single factor from being used twice with respect to the 
same offense
.
 Gonzalez
, 151 Ill. 2d at 83-84; 
Ferguson
, 132 Ill. 2d at 96. Defendant does not cite, and we cannot find, any principle that prohibits the use of a single factor with respect to separate and distinct offenses. In fact, this court has specifically held that “ ‘[a] person can be guilty of two offenses when a common act is part of both offenses.’ ” 
People v. Rodriguez
, 169 Ill. 2d 183, 188 (1996), quoting 
People v. Lobdell
, 121 Ill. App. 3d 248, 252 (1983). Such is the case here. Defendant committed a heinous battery not only by causing bodily harm to P.H. but by also inflicting severe and permanent disfigurement by means of a flammable substance. See 720 ILCS 5/12–4.1(a) (West 1996). In addition, he committed an aggravated kidnaping not only by kidnaping P.H. but also by inflicting great bodily harm upon her in the process. See 720 ILCS 5/10–2(a)(3) (West 1996). As defined by the legislature, these are entirely distinct offenses, and the State proved each of their elements beyond a reasonable doubt. Nothing prohibits such an outcome, and defendant’s heinous battery and aggravated kidnaping convictions therefore will stand.

CONCLUSION

For the foregoing reasons, we reverse that portion of the appellate court’s judgment modifying defendant’s sentences to run concurrently. The balance of the judgment is affirmed.

Affirmed in part and reversed in part
.