NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190634-U

NO. 4-19-0634

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| CORTEZ PHYFIHER, | ) | No. 18CF69 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer Hartmann Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Holder White and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   (1) The testimony of a sole witness and the other evidence was sufficient to convict the defendant, despite contrary testimony. (2) The circuit court did not commit plain error by considering evidence outside the record. (3) The circuit court did not commit plain error when sentencing defendant to one year more than the statutory minimum.

¶ 2   At a bench trial on April 29, 2019, the circuit court convicted defendant, Cortez Phyfiher, of aggravated battery (720 ILCS 5/12-3.05(d)(4)(i)(West 2016)). On July 29, 2019, the court sentenced defendant to four years of imprisonment. After the court denied defendant's motion to reconsider sentence, defendant appealed. Defendant raises three issues, though he did not raise the latter two in either of his posttrial motions. First, defendant claims the prosecution failed to prove defendant guilty beyond a reasonable doubt by presenting only the testimony of a correctional officer. Second, defendant asserts the court improperly relied on its own knowledge of correctional officer policies when evaluating the credibility of the witnesses who testified.

Third, defendant urges the court erred in sentencing defendant to one year more than the statutory minimum by using an element of the offense as an aggravating factor and disregarding the possible minimum sentence. We find no error, plain or otherwise as applicable, and affirm the judgment.

¶ 3                                    I. BACKGROUND

¶ 4        On November 24, 2015, defendant, who was an inmate at Pontiac Correctional Center, threw a liquid mixture of some sort at Jamawr Craft (Craft), another inmate. At this time, Matthew Hubert (Hubert), a correctional officer, was escorting Craft to another cell. The State alleged the substance defendant threw struck Hubert. The Department of Corrections disciplined defendant in a number of ways.

¶ 5        Years later, on March 9, 2018, the State charged defendant with aggravated battery for striking Hubert in his role as a correctional officer pursuant to section 12-3.05(d)(4)(i) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(d)(4)(i) (West 2016)), a Class 2 felony.

¶ 6        At the bench trial on April 29, 2019, the State presented Hubert as its sole witness. Hubert described the method he and others utilized to escort inmates from one cell to another, which requires the correctional officer to hold a short device attached to an inmate's handcuffs. This method places the officer an arm's length away and behind the inmate the officer is moving. Hubert testified at the time in question Hubert was using this method to escort Craft. While Hubert was moving Craft, they walked by the cell occupied by defendant. Hubert saw defendant throw a liquid, which covered Craft and struck the right side of Hubert's face. Hubert described the substance as smelling of urine and feces, and creating a burning sensation where the liquid struck Hubert's face. Hubert testified defendant was the only one in a location from which the liquid could have been thrown.

¶ 7          Though while escorting Craft, the left side of Hubert's face was the side exposed to the inmates in their cells, Hubert noted the substance struck his right side. Hubert explained this occurred because as he was walking Craft, as he does others, he tried to look ahead to determine if any inmate is sticking anything out of their cell. At times during such a process Hubert testified the right side of his face is more exposed than his left. In this manner, the liquid struck his right side.

¶ 8          Defendant called Carl Sturdivant (Sturdivant), another inmate in a nearby cell, who testified he observed the interaction of Hubert, Craft, and defendant. Sturdivant saw Craft in the gallery alone while Hubert was in the former's cell gathering the belongings to move. Craft and defendant began spitting on each other, and defendant then threw a liquid at Craft. Sturdivant testified Hubert was not near Craft when defendant threw the substance.

¶ 9          Defendant also called another inmate as a witness who said he heard the incident. This inmate saw Hubert shortly thereafter, and noted Hubert did not appear to have been struck by a liquid.

¶ 10          Defendant testified he threw spoiled milk on Craft, but that no one was with Craft when defendant did so. Defendant asserted neither Hubert nor any other correctional officer was in the area of Craft when defendant threw the liquid.

¶ 11          During his closing argument, defendant urged the circuit court to consider that there was no video evidence despite the existence of video cameras in the area. Defendant argued Hubert's reason he was struck on the right side of his face was not credible. As well defendant proffered the defendant's version that Craft was alone when struck was credible.

¶ 12          In finding defendant guilty of aggravated battery, the circuit court addressed the credibility of the witnesses, and specifically defendant's version of events:

"I've been hearing these types of cases for probably 14, 15 years now; and honestly it's the first time I've ever had an inmate to come in here and tell me that inmates are running around the gallery without any escort. I mean, it's a little incredible to believe. I've never heard that. I've heard a lot, and I've seen a lot. But I have never seen or heard in this day and age. Now, if you want to go back to the 80's, fine. Go back to the 80's. But this happened in 2015. I am fairly certain that the inmates were not unescorted when they were walking from one cell to the next. I simply do not believe it. It's too incredible to believe."

¶ 13 Further, the circuit court noted Hubert's testimony describing how the substance landed on the right side of his face was credible. And of course Hubert testified he saw defendant throw what hit Hubert.

¶ 14 On July 29, 2019, the circuit court held a sentencing hearing. The State sought a six-year period of incarceration given defendant's prior aggravated battery conviction for which defendant was then serving time. Defendant sought three years, the minimum term, given that defendant was 15 years old at the time of the prior offense. The court sentenced defendant to four years' incarceration, and two years of mandatory supervised release. Addressing defendant's request for the minimum three years, the court noted:

"I don't think the minimum is appropriate when you are in the Department of Corrections already and something like this happens.

So I just, it's not appropriate under any set of circumstances to throw something at somebody, whether it's a liquid substance, some form of bodily fluids in the liquid substance or to hit somebody or to strike out or anything like that when you're in the Department. And I'm not suggesting you hit anybody or tried to hit

anybody. But my point is simply they are trying to do their job; and when you are throwing liquid substances, it's awfully hard for them to be able to do their job effectively so that's why it's an aggravated battery."

¶ 15       Defendant filed a motion seeking a new trial and a motion asking the circuit court to reconsider the sentence. (Neither motion raised the second and third issues defendant does herein.) Defendant asserted he was entitled to a new trial because the State failed to prove the offense beyond a reasonable doubt. As to the sentence, defendant argued the term was overly harsh given defendant's history and conduct at issue. As well, defendant sought the minimum sentence since defendant caused no harm and in other settings the conduct could have been a misdemeanor. The court denied both motions.

¶ 16       From the order denying the motions, defendant appealed.

¶ 17                                II. ANALYSIS

¶ 18              A. Sufficiency of the Evidence and Standard of Review

¶ 19       We will not reverse a conviction on appeal "for insufficient evidence unless the evidence is so improbable or unsatisfactory that a reasonable doubt remains as to the defendant's guilt." *People v. Harris*, 2018 IL 121932, ¶ 26. We view the evidence in the light most favorable to the State, and consider whether any "rational trier of fact" could have concluded the evidence established the crime's essential elements beyond a reasonable doubt. *Id.* We do not retry the accused, and draw any reasonable inference in favor of the State. *Id.* Throughout, the fact finder's responsibility is to weigh the evidence, resolve conflicts within the evidence, and draw reasonable inferences therefrom. *Id.*

¶ 20       Our supreme court has repeatedly found the testimony of a lone witness can be sufficient to uphold a conviction, if that testimony is positive and credible. *Id.* ¶ 27. This is true

even if that single witness's testimony is contradicted by others. *Id.* In short, we will not substitute our judgment "for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *People v. Brown*, 2013 IL 114196, ¶ 48.

¶ 21                    B. The Evidence Was Sufficient to Convict Defendant

¶ 22        Defendant asserts the testimony of the State's sole witness, a correctional officer, was insufficient to convict defendant of aggravated battery. The State alleged defendant committed the offense by knowingly making physical contact of a provoking or insulting nature with Hubert, a correctional officer. Specifically, the State alleged defendant threw an unknown liquid on Hubert while he was performing his official duties.

¶ 23        Hubert testified he was employed as a correctional officer on the day in question, and was performing his duties when he was struck by a liquid thrown by defendant. At the time, Hubert was escorting another inmate, who was restrained, past the cell occupied by defendant. Hubert testified he saw defendant throw the substance, which landed on the inmate Hubert was escorting and Hubert. According to Hubert, defendant was the only one in the cell where the substance came from, and defendant was the only one who could have thrown the liquid. Hubert explained why the matter struck the right side of his face when it was the left side that was generally facing defendant's direction.

¶ 24        At trial, defendant and another inmate testified when defendant threw the substance, Hubert was not near the inmate Hubert claimed to be escorting and instead was in that inmate's cell helping gather some of the inmate's belongings. Defendant also called another inmate who, although he did not see the alleged battery, claimed to have heard it and observed Hubert shortly thereafter. This witness testified Hubert and his clothing did not appear wet.

¶ 25    We believe the evidence was sufficient to convict the defendant, the State having established all of the elements required. The circuit court believed the correctional officer's version of events, and rejected the defendant's. We will not substitute our judgment for the court's on the weight given the evidence or the credibility of the witnesses. Although the defendant presented a different version than the State, that does not meet the standard for reversal.

¶ 26                    C. The Circuit Court Did Not Commit Plain Error

                    as to Considering Evidence Outside the Record

¶ 27    Defendant claims the circuit court relied on evidence not before the court by considering the court's knowledge regarding how correctional officers escort inmates. Specifically, defendant asserts the court relied on this familiarity to determine the defense's claim Hubert left the inmate he was escorting alone in the gallery was not credible.

¶ 28    Defendant did not raise this issue at trial or in a posttrial motion, which is generally required to preserve error for review. *People v. Chapman*, 194 Ill. 2d 186, 225 (2000). Failing to so raise such an error is a procedural default, but some errors can be reviewed if we determine plain error has occurred. *Id.* at 226. The plain error doctrine "allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances." *People v. Herron*, 215 Ill. 2d 167, 178 (2005). In short, the "doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *Id.* at 186-87. Though the doctrine is "nonconstitutional," it "has roots in the same soil as due process." *Id.* at 177. "Fairness, in short, is the foundation of our plain-error jurisprudence." *Id.* Its "purpose is to protect the rights of the defendant and the integrity and reputation of the judicial process." *Id.* Defendant asserts error under both prongs of the doctrine.

¶ 29	Before we determine if the plain error exception to forfeiture applies, however, we first determine if any error occurred at all. *Chapman*, 194 Ill. 2d at 226. If we find no error, there is no plain error basis to avoid procedural default. *Id.* at 227.

¶ 30	We review defendant's claim the circuit court considered evidence outside the record *de novo*. *People v. Dameron*, 196 Ill. 2d 156, 171 (2001). As our supreme court has noted repeatedly:

> "A determination made by the trial judge based upon a private investigation by the court or based upon private knowledge of the court, untested by cross-examination, or any of the rules of evidence constitutes a denial of due process of law." (Internal quotation marks omitted.) *Id.* at 171-72.

¶ 31	We presume a circuit court "considered only admissible evidence in reaching a conclusion." (Internal quotation marks omitted.) *In re T.R.*, 2019 IL App (4th) 190529, ¶ 98. And although a court commits error considering private knowledge, "that error is harmless when a reviewing court can safely conclude that consideration of the facts outside the record did not affect the result." (Internal quotation marks omitted.) *Id.* Therefore, even if the court herein considered facts outside the record, which we do not believe occurred, that error is harmless as we do not believe it affected the result.

¶ 32	Defendant likens this case to *Dameron*, where the circuit court commented at length during the sentencing hearing on a social science text and comments made by his father (as circuit judge) when sentencing a defendant convicted of murder. We disagree and think this is more analogous to another decision cited therein: *People v. Griffith*, 158 Ill. 2d 476 (1994). The circuit court in the latter simply commented that one sentenced to natural life incarceration would, after a year in disciplinary segregation, return to the general population. *Dameron*, 196 Ill. 2d at 174.

This observation was "but one aspect" of the court's rationale, and did not rise to error. *Griffith*, 158 Ill. 2d at 497.

¶ 33 Similarly, the circuit court's comments below that the court thought defendant's version implausible did not constitute error. At the conclusion of the bench trial, the court articulated the basis for the court's credibility and factual findings. The court noted it found Hubert's explanation why he was struck on the right side credible, and that defendant admitted to throwing the liquid. The court chose to discredit the testimony of defendant and his witnesses, all who were incarcerated. As we have concluded previously, we think the court's comments and perspective did not constitute an improper basis for the factual findings or judgment. See, *e.g.*, *T.R.*, 2019 IL App (4th) 190529, ¶ 120.

¶ 34 Finding no error, we find no plain error basis to permit defendant to avoid procedural default on the issue of the circuit court's consideration of evidence outside the record.

¶ 35 D. The Sentence Is Not an Abuse of Discretion

¶ 36 Defendant asserts the circuit court wrongfully considered Hubert was a correctional officer as an aggravating factor at sentencing where Hubert's status was an element of the offense. As well, defendant urges the court erred by ignoring the minimum three-year sentence instead of the four-year period of incarceration the court imposed.

¶ 37 We review a circuit court's sentence for an abuse of discretion. *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995). A court exercises "broad discretionary powers" when sentencing, and that exercise "is entitled to great deference." *People v. Butler*, 2013 IL App (1st) 120923, ¶ 30. In fact, the sentence is "presumed to be proper." *Id.* ¶ 31. This is so because the court is in a better position to evaluate the myriad of sentencing factors, and determine the appropriate sentence. *Id.* ¶ 30. We cannot substitute our perspective because we would weigh the factors differently. *Id.* The

court abuses its discretion when its sentence "is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *Id.*

¶ 38      We do not believe the circuit court abused its discretion by imposing the four-year sentence. The court had the opportunity to observe the defendant, and consider factors bearing on sentencing. And again, the court articulated the reasons for its sentence. We will not substitute our judgment, and do not find the four-year term is arbitrary or unreasonable.

¶ 39      As to defendant's other assertion, that the circuit court illegally enhanced his sentence, defendant did not raise it in a posttrial motion. We must consider then whether defendant has waived the issue. To do so, we use the same plain error analysis as above. For economy, we do not repeat the framework here.

¶ 40      We first must determine whether the circuit court committed any error by enhancing as defendant alleges. The same factor cannot be used to enhance a sentence and as an element of an offense. *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). *Phelps* is instructive regarding defendant's claim. Therein, the allegation the defendant caused severe and permanent disability was an element of the heinous battery charge. That element elevated the battery from a Class A misdemeanor to a Class X felony. *Id.* at 13. That Class X felony carried a sentencing range of 6 to 45 years in prison, and the court sentenced the defendant to 30 years of imprisonment. *Id.* Though the sentence was based in part on the defendant's infliction of severe injury, the use of the injury constituted but one enhancement. *Id.* at 13-14. The lower court therefore committed no error. *Id.* at 14.

¶ 41      Herein, Hubert's status as a correctional officer was used to elevate the offense to aggravated battery. Defendant received a sentence within the range provided for that offense. Thus,

the severity of the offense was enhanced but once, and the circuit court committed no error in imposing sentence.

¶ 42       Finding no error of illegal sentence enhancement, we find no plain error reason to allow defendant to avoid waiver on this second sentencing issue.

¶ 43                           III. CONCLUSION

¶ 44       For the foregoing reasons, we affirm the circuit court's judgment.

¶ 45       Affirmed.