2022 IL App (1st) 201134-U

No. 1-20-1134

Order filed June 17, 2022

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 17380 |
| | ) | |
| MICHAEL KING | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's sentences are affirmed where the trial court (1) did not rely on elements of the offenses in aggravation and (2) properly considered mitigating factors with the seriousness of the offenses.

¶ 2    Following a bench trial, defendant Michael King was found guilty of one count of armed habitual criminal (AHC), two counts of unlawful use of a weapon by a felon (UUWF), one count of aggravated discharge of a firearm, and two counts of aggravated assault of a peace officer while performing his official duties. The court merged certain counts and sentenced defendant to concurrent terms of 14 years for AHC, 14 years for aggravated discharge of a firearm, and 3 years for aggravated assault of a peace officer. On appeal, defendant argues that the court (1) committed

plain error by improperly relying on the elements of the offenses in aggravation at sentencing, and (2) failed to adequately consider mitigating factors, resulting in an excessive 14-year term in prison. We affirm.

¶ 3     Defendant was charged by indictment with multiple offenses arising from an incident on November 14, 2018. The charges included attempted murder of Demico Hardin[1] (counts I-II) and Shevell Wilson (counts III-IV), AHC (count V), aggravated discharge of a firearm towards Hardin (count VI) and Wilson (count VII), UUWF predicated on possessing a handgun (count VIII) and ammunition (count IX), aggravated unlawful use of a weapon (counts X-XIII), and aggravated assault of a peace officer while performing his official duties (count XIV), to prevent performance of his official duties (count XV),  and in retaliation for performing his official duties (count XVI).

¶ 4     Hardin testified that around 3 p.m. on November 14, 2018, she was dropping off her son, Wilson, near Chicago Avenue and Lawndale Avenue. As she parked, she saw an acquaintance, "Little Steve," standing in the street with his hands raised while defendant stood nearby talking on his phone. Wilson stated that Little Steve was being robbed. As Hardin drove away, defendant pointed a firearm toward her vehicle, and she heard five or six gunshots.

¶ 5     Hardin circled the block, called 911, and discovered that her tire had been shot. She saw defendant running on Lawndale and Huron Street, near a school, so she called 911 a second time. Then, Hardin heard a gunshot and followed police to an alley on Central Park Avenue. There, she informed the police that she had seen the shooter. The police told Hardin that a man had been shot by an officer; she identified that man, defendant, as the person who shot at her vehicle.

---

[1] Hardin is referred to as "Demiko Harden" in the trial transcript; the correct spelling of her name, which we adopt here, was given at the sentencing hearing.

¶ 6    On cross-examination, Hardin confirmed that she did not get a good look at the shooter while driving away. She had a flat tire when she returned to Lawndale, but there were no bullet holes in her car.

¶ 7    Chicago police officers Angel Escobedo and Jeremy Keller testified that they were patrolling the area of Chicago and Lawndale around 3 p.m. on November 14, 2018, when they received a call of shots fired and observed people running from Ridgeway and Chicago. The people identified three men, including defendant, standing on Chicago, near a school, and said that one had a firearm. Escobedo exited his vehicle and pointed his firearm at one of the men; that man was unarmed but indicated that defendant had a firearm.

¶ 8    Defendant first walked away, but then ran, disregarding Keller's commands to stop. The officers followed in their vehicle and observed defendant at the mouth of an alley pointing his firearm towards another man, who was on the ground. As Escobedo and Keller approached, defendant fled through the alley.

¶ 9    Chicago police sergeant Timothy Finley and officers Daniel Warren and Brian Collins testified that they pursued on foot as defendant ran from Lawndale. Warren testified that he saw a firearm in defendant's right hand as he ran past houses.

¶ 10    Collins testified that he pursued defendant to a gangway near a two-flat building on Central Park and pointed his firearm at defendant, ordering him to the ground. Defendant looked at Collins, then turned. Collins observed a firearm in defendant's right hand and ordered defendant to drop the firearm. Defendant ignored the order and stepped towards Collins. Collins shot defendant in the abdomen and then "orchestrate[d]" medical aid.

¶ 11    On cross-examination, Escobedo, Keller, and Warren all testified that they never witnessed defendant shoot the firearm.

¶ 12    Chicago police officer Jonathan McCabe, an evidence technician, testified that he collected and inventoried a firearm, a fired cartridge, a fired bullet, latex gloves, bandages, and a baseball cap from the gangway on Central Park. On North Lawndale, he recovered six fired cartridge cases and one bullet from a vehicle's tire.

¶ 13    Forensic specialist Marc Pomerance testified that the recovered firearm discharged the six cartridge cases, but he could not determine whether it fired the bullet that struck Hardin's vehicle.

¶ 14    The State entered stipulations that forensic scientists would testify that tests on DNA and fingerprint evidence collected from the firearm were inconclusive. It also entered defendant's certified copies of conviction for Class 2 felony manufacture or delivery of a controlled substance in two cases from 2012. As part of its case-in-chief, the State also published surveillance footage from Chicago and Lawndale of defendant shooting at Hardin's vehicle, a recording of Hardin's 911 call, photos of the damage to Hardin's vehicle, and footage and still images of the police chase.

¶ 15    The defense moved for a directed finding, which the court granted on counts I-IV and X-XIII.

¶ 16    For its case-in-chief, the defense entered a stipulation that Chicago police officer Alfini would testify that Keller reported observing defendant with "a black object that [Keller] believe[d] is a gun."[2]

---

[2] Officer Alfini's first name was not included when defense counsel read the stipulation into the record.

¶ 17    After closing arguments, the court found defendant guilty of AHC (count V), UUWF (counts VIII and IX), aggravated discharge of a firearm toward Hardin (count VI), and aggravated assault of a peace officer while performing his official duties (count XIV) and to prevent performance of his official duties (count XV). The court found defendant not guilty of aggravated discharge of a firearm towards Wilson (count VII), and aggravated assault of a peace officer in retaliation for performing his official duties (count XVI).

¶ 18    Defendant filed a motion for new trial, which the court denied.

¶ 19    Defendant's presentence investigation (PSI) report reflected convictions for retail theft (2016), driving on a suspended or revoked license (2016), and criminal damage to property (2015). Defendant also had four drug-related convictions from 2012, and convictions for possession of a controlled substance (2009), possession of cannabis (2008, 2008, 2007, and 2004), manufacture or delivery of cannabis (2004), possession of cocaine (2004), and attempted possession of a controlled substance (2002). Defendant also had a juvenile adjudication for unlawful use of a weapon (2001).

¶ 20    According to the PSI, defendant was 33 years old on the date of the instant offenses. He was raised by his mother until her death in 1995, then briefly by his stepfather, and then his grandmother. His stepfather was physically abusive, and defendant only had occasional contact with his biological father. Defendant was expelled from high school during his sophomore year due to truancy but earned his GED while incarcerated in 2013. At the time of his arrest, he had worked as a carpenter for two years. For six months, he also worked at a liquor store.

¶ 21    Defendant had nine children between the ages of 1 and 18, including four children with his current girlfriend. He had regular contact with eight of his children but did not get along with the

mother of the ninth child. Defendant saw a mental health professional in Cook County Jail for anxiety and stress, had been prescribed Paroxetine, and indicated he would comply with any court-ordered mental health treatment.

¶ 22    Defendant had a history of alcohol abuse and regularly consumed "a couple of six-packs during the week." Defendant also smoked marijuana a few times per month and, previously, regularly used ecstasy and PCP. His drug use caused problems with his family. Defendant had been in alcohol treatment two or three times but had not consumed alcohol or used drugs since November 2018.

¶ 23    At the sentencing hearing, the State argued in aggravation that defendant appeared to have been committing an armed robbery, then fired toward an occupied vehicle, ran past a school while holding the firearm, and while he fled from police, pointed his weapon at another individual who was on the ground in an alley. The State also noted defendant's "nine prior felony convictions" and requested a prison term of 20 years.

¶ 24    In mitigation, defense counsel presented a letter from a chaplain at the jail which indicated that defendant had participated in a bible study group and showed growth.[3] Counsel argued that defendant had good familial relationships, obtained his GED in 2013, and, for the last two years, regularly worked as a carpenter. Counsel acknowledged defendant's extensive drug history but indicated that defendant sought treatment and requested the court order a drug evaluation and treatment while he was in prison. Finally, counsel noted that four of defendant's prior convictions were related to a single incident, and he did not have a history of violent crime.

---

[3] Another letter from a friend was also tendered to the court, though its contents were not read into the record; nor is it included in the record on appeal.

¶ 25    In allocation, defendant stated that he is nonviolent, and wanted help for his issues and to learn from his mistakes. He wanted to go home and show his children a better example and apologized to everyone who tried the case and attended court with him.

¶ 26    The court merged the counts for UUWF into the count for AHC and merged the counts for aggravated discharge of a firearm. The court sentenced defendant to concurrent terms of 14 years' imprisonment for AHC and aggravated discharge of a firearm (counts V and VI), and 3 years' imprisonment for aggravated assault of a peace officer (count XIV).

¶ 27    In so holding, the court stated that defendant had significant mitigation, including his support from family and friends, his behavior during trial, and his upbringing. However, the court also noted defendant's extensive drug history was "quite aggravating," despite being nonviolent, and that it indicated a pattern of behavior which led to this case.  The court stated:

> "And I listened to your attorney's arguments. And this is a matter where, you know, you had a gun. You shot it. And then there's a confrontation with a police officer who shot because you had a gun. So, these are aggravating facts."

¶ 28    The court added that it believed, given all the mitigation, that the maximum sentence—30 years' imprisonment—was inappropriate, as was the State's request for 20 years.

¶ 29    Defense counsel filed a motion to reconsider sentence, arguing that the sentence was disproportionate to the nature of the case and that the court failed to properly consider mitigating factors. The court denied the motion.

¶ 30    On appeal, defendant first argues that the trial court erroneously relied on elements of the offenses as aggravating factors at sentencing. Defendant acknowledges that the issue was not

preserved in his posttrial motion, and requests that this court review it under the plain error doctrine.

¶ 31    To preserve a claim of sentencing error, the defendant must contemporaneously object and file a written postsentencing motion raising the issue. *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). When the defendant fails to preserve the issue, this court may review it under the plain error doctrine. *People v. Wooden*, 2014 (1st) 130907, ¶ 10. Under the plain error doctrine, the defendant must first show that a clear and obvious error occurred, and then that (1) the evidence at sentencing was closely balanced, or (2) the error was so egregious that it denied the defendant a fair sentencing hearing. *Id*.

¶ 32    A trial court may not consider a factor that is inherent to the offense in aggravation at sentencing. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 58 (citing *People v. Saldivar*, 113 Ill. 2d 256, 264, 272 (1986)). There is an assumption that the legislature already considered the elements of the crime when designating the appropriate sentencing range. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004). The court may, however, properly consider the nature and circumstances of the offense, including "the nature and extent of each element of the offense as committed by the defendant." *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 55. "The rule that a court may not consider a factor inherent in the offense is not meant to be applied rigidly, because sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense." (Internal quotation marks omitted.) *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007).

¶ 33    As charged, a defendant commits aggravated discharge of a firearm when he knowingly discharges a firearm towards a vehicle that he knows or reasonably should have known to be occupied. 720 ILCS 5/24-1.2(a)(2) (West 2018). AHC occurs when a defendant possesses a

firearm after having been convicted two or more times of a qualifying felony. 720 ILCS 5/24-1.7(a) (West 2018). A defendant commits aggravated assault of a peace officer, as charged, when he uses a firearm to knowingly place an officer in reasonable apprehension of a battery through means other than discharging the firearm, while the officer is performing his official duties. 720 ILCS 5/12-2(c)(6)(i) (West 2018).

¶ 34    Defendant argues that the trial court considered the elements of the offenses, specifically his possession and use of a firearm and his confrontation with a police officer, as aggravating factors. Defendant cites the court's statement that "this is a matter where, you know, you had a gun. You shot it. And then there's a confrontation with a police officer who shot because you had a gun. So, these are aggravating facts."

¶ 35    We find the trial court did not commit clear or obvious error by considering factors inherent in the offenses. Defendant fails to contextualize the trial court's statement. See *People v. Sauceda*, 2016 IL App (1st) 140134, ¶ 13 (in determining the correctness of a sentence, this court must consider the record as a whole, rather than focus on a few words or statements made by the trial court). The court made this declaration after assessing a number of aggravating factors, including defendant's extensive drug and criminal history, which constituted a pattern of behavior leading to the instant offenses. Furthermore, this statement was immediately preceded by the court's observation that it "listened to [defendant's] attorney's arguments," in which counsel had noted that defendant lacked a history of violent crime. The court, therefore, did not mention the use of a firearm or the confrontation with the police as aggravating factors in their own right, but contrasted the offense in the present case with defendant's criminal history to explain that defendant's criminal conduct was ongoing and became more serious over time.

¶ 36    Moreover, the court was permitted to consider the nature and circumstances of the offense and the degree and gravity of the defendant's conduct. *Sauceda*, 2016 IL App (1st) 140134, ¶ 18; *Brewer*, 2013 IL App (1st) 072821, ¶ 55. Here, defendant discharged a firearm at a vehicle occupied by two people, striking the tire and then, while armed, led police on a chase near a school. During the chase, defendant pointed the firearm at another person, refused orders to drop his weapon, and was ultimately shot by a police officer in the vicinity of a two-flat. The court properly considered these circumstances in determining the egregiousness of defendant's conduct. *Id.* As the court did not err by considering these acts, no plain error occurred and defendant's request for plain error review is, therefore, meritless. *Wooden*, 2014 (1st) 130907, ¶ 10.

¶ 37    Next, defendant argues that the trial court abused its discretion when it failed to properly consider his history of drug abuse as a mitigating factor and ignored his rehabilitative potential and the impact of the sentence on his children.

¶ 38    When sentencing a defendant, the trial court must balance "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court has broad discretion when imposing a sentence, and its decisions are entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The reviewing court will not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. *Id.* at 213. The trial court is in the best position to evaluate the appropriate sentence because it personally observed the defendant and the proceedings. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50.

¶ 39    If the sentence is within the statutory limits, this court will not disturb the sentence absent an abuse of discretion. *People v. Burton*, 2015 IL (1st) 131600, ¶¶ 35-36. Abuse of discretion

occurs when a sentence is "manifestly disproportionate to the nature of the offense." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). The presence of mitigating factors or an absence of aggravating factors does not mean that the minimum sentence must be imposed. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). The most important factor in determining an appropriate sentence is the seriousness of the crime. *Id*.

¶ 40   As charged, aggravated discharge of a weapon is a Class 1 felony with a sentencing range of 4 to 15 years' imprisonment. 720 ILCS 5/24-1.2(a)(2), (b) (West 2018); 730 ILCS 5/5-4.5-30(a) (West 2018). AHC is a Class X felony with a sentencing range of 6 to 30 years' imprisonment. 720 ILCS 5/24-1.7(b) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). Aggravated assault of a peace officer is a Class 4 felony with a sentencing range of one to three years' imprisonment. 720 ILCS 5/12-2(c)(6)(i), (d) (West 2018); 730 ILCS 5/5-4.5-45(a) (West 2018). Defendant was sentenced to concurrent prison terms of 14 years for aggravated discharge of a weapon, 14 years for AHC, and 3 years for aggravated assault of a peace officer. The sentences fell within their respective statutory guidelines and are, therefore, presumed to be proper. *Burton*, 2015 IL (1st) 131600, ¶ 36.

¶ 41   In this case, the court considered numerous factors in mitigation and aggravation. The court acknowledged that it found the mitigation "significant" and that defendant's conduct in court also contributed to that mitigation. The court specifically cited defendant's familial support and his relationships with those around him as significant mitigating factors, as well as his behavior during trial and his upbringing. Additionally, defendant's PSI mentioned his children. See *People v. Brown*, 2017 IL App (1st) 142877, ¶ 64 ("where relevant mitigating evidence is before the court, we presume the court considered it, absent some indication in the record to the contrary other than

the sentence itself"). The court also declared that it believed that the maximum prison sentence of 30 years and the State's suggested sentence of 20 years were both too high. See *Quintana*, 332 Ill. App. 3d at 109 (the trial court is not required to recite and assign a value to every mitigating factor on which it relied; its failure to mention a mitigating factor does not conclusively establish that it ignored that factor).

¶ 42    However, the court also found that defendant had a long history of drug-related crimes, which, though nonviolent, was not insignificant and indicated a pattern of behavior which led to the case at bar. It also cited the extensive evidence presented at trial. Defendant shot at a vehicle without provocation or consideration for its occupants, and then failed to respond to multiple police orders to stop, resulting in an officer shooting him. See *People v. Alexander*, 239 Ill. 2d 205, 214 (2010) (rehabilitative potential is not entitled to greater weight than seriousness of offense). The court sentenced defendant to a total of 14 years' imprisonment, well within the sentencing guidelines and below what the State requested. In light of the foregoing, the sentence is not "manifestly disproportionate to the nature of the offense." *Jackson*, 375 Ill. App. 3d at 800.

¶ 43    A reviewing court cannot substitute its judgment for that of the trial court and reweigh the sentencing factors. *Alexander*, 239 Ill. 2d at 212. Considering all the factors, we find that the trial court's sentence was not an abuse of discretion. *Jackson*, 375 Ill. App. 3d at 800.

¶ 44    For the foregoing reasons we affirm the judgment of the circuit court.

¶ 45    Affirmed.